# CALEDONIA COUNTY,

## AUGUST TERM, 1871.

[ CONTINUED FROM ANTE PAGE 67.]

---

### JOHN WHEELER v. A. J. WILLARD.

#### [IN CHANCERY.]

*Conveyance in Trust for Benefit of Creditors. Levy of Execution. Mortgage. Decree. Redemption. Attorney and Client. Estoppel. Tenants in Common.*

L. conveyed certain premises subject to two mortgages to B., in trust for the benefit of his creditors, and without consideration. B. conveyed the same by quit-claim to J. The orator levied his execution upon and set off a fractional part of the equity of redemption in said premises as the property of L. *Held* that the orator by his levy acquired such an interest in the premises as to entitle him to redeem.

By the payment of the decree of foreclosure upon one of the mortgages by the orator, before it became absolute, the premises were redeemed and the operation of the decree was arrested.

Although the payment of the money to the clerk was received and certified by him to be a full discharge of the decree, yet a court of equity will ever in such cases keep the mortgage on foot and treat the transaction as a purchase rather than a payment of the decree, "as may best subserve the purposes of justice."

Although the mortgage is in fact paid, yet equity will require it to subsist until every party who owes a duty under the mortgage shall have discharged it.

The orator standing in the relation of owner in part of the equity of redemption by virtue of his levy, acquired the right by the payment of the decree to be treated in equity as the assignee of the mortgage, and to enforce contribution from the defendant in the ratio of his interest in the equity of redemption.

The orator and defendant were tenants in common and the purchase of an incumbrance upon the common estate would enure to the common benefit, and each become liable to his co-tenant to make his proportionate contribution.

A client has the right to treat all acts of his solicitor touching his interest as done for his benefit, and often he may require an estate purchased by the solicitor to be held in trust for him.

The orator believed and had good reason to believe from the acts and declarations of the defendant, that upon surrendering the possession of the premises to the orator, he distinctly waived all further claim thereto ; and relying upon that the orator sold the premises, with covenants of title, for a less sum than the incumbrances which he had paid. The value of the premises having become enhanced, the defendant should now be estopped from asserting any claim to the premises.

*Mandate* directed a decree for the orator, enjoining the defendant from asserting any claim to the premises in question under his deed.

BILL IN CHANCERY. The bill charged that Andrew J. Willard pretended to be seized and possessed of, or otherwise well entitled unto a certain parcel of land, and the appurtenances thereto adjoining or belonging, situated in St. Johnsbury aforesaid, and described as follows, viz : It being the same land mortgaged to Ebenezer Woods by Jonathan Lawrence and Julia Lawrence on the 5th day of January, 1857, and also described in a mortgage executed by said Lawrence to said Woods on the 4th day of April, 1856, it also being the same land described in an action in ejectment now pending in Caledonia county court, entitled, *A. J. Willard* v. *O. G. Hale,* said Hale being one of the grantees of the orator, and said suit being prosecuted for the purpose of recovering possession of said property ; which said land was, on the 13th day of February, 1857, occupied by the said Jonathan Lawrence, ( the mortgagor ). That on or about the 13th day of February, 1857, said Lawrence was indebted to him, the orator, in the sum of ninety-five dollars and forty cents, and that on said last day the orator obtained a judgment against said Lawrence for said sum, with the costs, and that immediately thereafter procured an execution on said judgment to be levied on the equity of redemption of said premises, and the same was legally set off to the orator in satisfaction of said debt, and said judgment has not been paid, or said land in any manner redeemed. That at the time of said levy, said land was mortgaged to Ebenezer Woods for the sum of five hundred and forty-five dollars ; that said land was also mortgaged to Lambert Hastings to secure the payment of two hundred dollars ; and the orator paid said sums and the interest thereon, and procured said mortgages to be discharged ; said sums with the interest on the same amounted, on the 5th day of May, 1865, to the sum of fourteen hundred and eighty-five dollars. That after the set-off as aforesaid, said Willard pretended to own the equity of redemption of said premises, and proposed to the orator, that, if he would pay him the sum of one hundred dollars, he would quit-claim to the orator said premises ; and to avoid litigation the orator promised to pay Willard said sum, and in payment thereof allowed Willard to appropriate to his own use the rents of said premises to that amount ; that Willard, instead

of being satisfied with said sum of one hundred dollars, actually received the sum of one hundred and seventy dollars, and has ever refused to refund said seventy dollars to the orator, but gave the orator permission to take possession of said premises ; but the defendant has never deeded said premises to the orator as in justice and equity he ought to have done ; that on the 22d day of May, 1865, the orator deeded said premises for the sum of thirteen hundred and fifty dollars, to John Drew, by deed of warranty, he supposing at that time, and still believing, that he was the rightful owner thereof, and that said Willard would, on demand, execute to him a deed of the same ; and said thirteen hundred dollars was the entire value of the same ; that there has been a great advance in the value or price of real estate in the vicinity of said premises, and that by reason of said advance the orator would be greatly damaged if his grantees are disturbed in their possession thereof ; that he hath repeatedly applied to said Willard and has requested him especially to perform his aforesaid contract.

*Prayer :* that the defendant may be decreed specifically to perform the said agreement and make a good and marketable title to the orator and his grantees to said premises, and refund to the orator the said seventy dollars and the lawful interest thereon.

The defendant filed an answer to said bill of complaint, admitting certain of the allegations therein contained, but denying that he ever agreed to give to the orator a quit-claim deed of said premises ; or that he ever agreed or had any understanding with the orator whatever ; that the use of the place, while in his possession, should belong to the orator, and be applied in payment of the one hundred dollars for which the defendant offered at one time to sell his interest in said premises to the orator, which offer the orator refused to accept; and also denying that the orator ever called upon him, or demanded of him a quit-claim deed of said premises, or ever claimed that this defendant had ever agreed to give him a quit-claim deed of said premises.

The case was heard upon the bill, answer, and testimony before Ross, chancellor, who dismissed the bill with costs, from which decree the orator appealed.

*O. T. Brown*, and *Belden & May*, for the orator.

Where one party has by any act of his given another party to understand he has power to act in any matter, he is afterwards estopped from denying it. *Giddings* v. *Eastman*, 5 Paige, 561. Mr. Willard cannot thus use his position to cheat the man who had deal with his client. *Stoors* v. *Barker*, 6 J. C. R., 166. "An attorney is bound to show by a balance of proof that his conduct is honorable." *Hawley* v. *Cramer*, 4 Cowan, 717. The money was paid into court December 4, 1861, and Mr. Willard's deed was dated December 6, 1861. Willard was Woods' solicitor until the cause for which he was employed was terminated. 2 Green. on Ev., § 142. The payment by Dr. Wheeler was not voluntary. *Downer* v. *Wilson, &c.*, 33 Vt., 1 ; 2 Hill on Mort., 270, § 17 ; *Grant* v. *Duane*, 9 John., 611 ; 1 Hill on Mort., 399 ; 2 Story's Eq. Juris., § 1542, *et seq.* ; *Poillon* v. *Martin*, 1 Sand. C. R., 569 ; 1 Green. Ev., § 207, and cases : *Higginbotham* v. *Barrett*, 5 J. C. R., 184 ; 1 U. S. Eq. Dig., 429–60 and 73.

*A. J. Willard, pro se.*

The orator was a mere stranger, who had no right to come in and redeem the premises, and if he did, it gave him no title to the premises, or claim upon the owners of the land for a repayment of the money. *Payne* v. *Hathaway*, 3 Vt., 212, 228 ; *Merriam, Adm'r.*, v. *Barton et al.*, 14 Vt., 501 ; *Downer* v. *Fox*, 20 Vt., 388 ; *Downer* v. *Wilson et al.*, 33 Vt., 1 ; *Gates et al.* v. *Winslow*, 1 Mass., 65 ; *Gelson* v. *Chehore*, 9 Pick., 149.

The opinion of the court was delivered by

REDFIELD, J. This case shows that the orator levied his execution upon and set off a fractional portion of the equity of redemption of Jonathan Lawrence, in certain premises in St. Johnsbury, on the 21st day of July, 1859 ; that such premises were at that time subject to mortgages to Ebenezer Woods and Lambert Hastings ; that said Lawrence conveyed, in trust for the benefit of his creditors, the same premises to Barron Moulton, on the 31st December, 1866 ; and said Moulton conveyed the same premises to John B. Woods, November 2d, 1857.

Ebenezer Woods obtained a decree of foreclosure of his mort-

gage against Lawrence and wife, John B. Woods, and the orator, at the December term of Caledonia county court, 1860, which became absolute on the 4th day of January, 1862; and on the 4th day of December, 1861, the orator paid to the clerk of said court the full amount of said decree, and the clerk's fees; which he certified on the record to be " a full discharge of said decree." The said Lawrence and wife and John B. Woods conveyed the same premises to defendant on the 6th of December, 1861.

Assuming the orator's levy to be regular and valid, and operative to vest in the orator certain aliquot parts of the equity of redemption, the parties are each owners of a fractional interest in the equity of redemption.

I. The defendant insists that the levy was invalid for the reason that Lawrence, by his deed to Moulton, was divested, at the time of the levy, of all title or interest in the premises. But the deed to Moulton was voluntary, without consideration, and expressly in trust for the benefit of creditors, and the orator may rightfully claim that the deed was inoperative against him as a creditor; and, upon the proof in this case, we are not prepared to say that the orator did not acquire an interest, by his levy, in the premises, and stand in such relation that he might rightfully redeem.

II. By the payment of the decree of Ebenezer Woods, before it became absolute, the premises became *redeemed*, and the operation of the decree arrested. Although the payment of the money to the clerk was received, and certified by him to be a full discharge of the decree, yet a court of equity will ever, in such case, keep the mortgage on foot, and treat the transaction as a *purchase* rather than *payment* of the decree, " as may best subserve the purposes of justice." *Bullard* v. *Leach*, 27 Vt., 491.

The party paying the decree becomes invested with the rights of the mortgagee and the assignee in equity of the mortgage. Equity engrafts this provision upon the transaction to prevent fraud and to subserve justice. And although the mortgage is in fact paid, yet equity will require it to subsist until every party, who owes a duty under the mortgage, shall have discharged it. The orator, standing in the relation he did, as owner in part of

the equity of redemption, by virtue of his levy, acquired the right, by the payment of the decree, to be treated in equity as the assignee of the mortgage for the purpose of compelling contribution. But the payment of the decree stayed its operation, not only as against *him*, but also as against the co-defendants. The decree became cancelled as to the mortgagee, Ebenezer Woods, and the orator thereby acquired the right, as assignee in equity, to enforce contribution from the defendant in the ratio of his interest in the equity of redemption, and no more.

There is another reason why the orator cannot exclude the defendant from participating in the benefits from his lifting a burden from their common estate. They were tenants in common, and the purchase of an incumbrance upon the common estate would enure to the common benefit, and each become liable to his co-tenant to make his proportionate contribution.

III. The orator claims that the purchase of the equity of redemption by the defendant, while he was the solicitor of Ebenezer Woods, in procuring the decree, was wrongful, and that he ought not to be permitted to take any benefit from his purchase. The rule is well established, and founded on sound policy and clear principles of equity, that the client has the right to treat all acts of his solicitor, touching his interest, as done for his benefit ; and often he may require an estate purchased by the solicitor to be held *in trust* for the client. But if the decree became annulled by the payment by the orator to the clerk, and his discharge of the same, there would seem no reason why Ebenezer Woods might not lawfully become the purchaser of the equity of redemption, without any infraction of the rights of the orator ; and if so, there would be no wrong in the solicitor's making the purchase.

IV. The sole ground of relief upon which the bill is predicated —and the orator must stand upon the case made in his bill—is the alleged contract of the defendant to convey his interest to the orator for one hundred dollars.

Upon the proof the defendant's interest would seem nominal, and the incumbrances the full value of the property.

The orator has conveyed the premises with covenants of war-

ranty, relying upon, and in faith, as he alleges, of the defendant's agreement.

The defendant admits that he offered to convey his interest to the orator for $100, and afterwards for $50, which he says the orator rejected. The orator claims that he protested against the claim, but finally yielded to the defendant receiving that sum, in satisfaction of his claim, from the rents of the premises. The defendant went into possession, and after receiving, for the use, something more than $100, he vacated the premises and notified the orator that his claim was satisfied, and that the orator might take the possession.

The defendant requested Moulton, who had become the owner of the Hastings mortgage, to hold the same; that he might wish to pay it. He afterwards notified Moulton that he had concluded *not to redeem*, and referred him to the orator, and thereupon the orator paid the mortgage to Moulton.

Were this an ordinary case of a bill for specific performance of a contract for the conveyance of real estate, resting entirely upon parol evidence, and not certain and specific, we should deem it unsatisfactory upon which to base a decree of that nature. But there is a *character* impressed upon this case by the evidence, which makes it evident that the orator conveyed these premises, with covenants of title, under the conviction and in the faith that defendant had distinctly abandoned all purpose of redeeming the estate, and waived all claim or title to the premises. The incumbrances were the full value of the estate. He fixed the value of his interest at $100. He surrendered the possession to the orator, after he had received in rent something over $100. He notified Moulton that he had abandoned the purpose of redeeming the premises. The acts of the defendant evince what the witnesses Brown and Harris say he declared in words, that "Wheeler owned the place;" that "you need not institute proceedings against me, I have got what I claim out of the premises and the Dr. may have them. You may tell him to take the possession." We are satisfied from the evidence and the *history* of this case, that the orator believed, and had good reason to believe from the acts and declarations of the defendant, that when he surrendered

possession to the orator, he distinctly waived all further claim to the premises; and that, relying upon that, the orator sold the premises, with covenants of title, for a less sum than the incumbrances which he had paid. As the value of the estate has become enhanced, it would work a fraud upon the orator if defendant was now allowed to redeem. And this condition of the orator has been so far *induced* by the acts, declarations and conduct of the defendant, that he should now be estopped from asserting any claim to the premises.

The decree of the chancellor is reversed and remanded to the court of chancery with directions to enter a decree for the orator, perpetually enjoining the defendant from asserting any claim or title in or to the premises set forth in the orator's bill, under or by virtue of the deed from Jonathan Lawrence and wife and John B. Woods to defendant, dated December 6th, 1861, and for his costs.