WELCOME KINSLEY, in equity,

*vs.*

MARCELLUS J. DAVIS and NANCY E. DAVIS.

Oxford.    Opinion February 24, 1883.

*Mortgages.    Discharge.    Equity.*

Where the discharge of a mortgage is the result of fraud or mistake, a court
of equity will decree its cancellation when it can be done without interfering

with or infringing upon the just rights of parties interested, or where no rights of third persons have intervened.

ON REPORT.

Bill in equity. Heard on bill, answer and proofs.
The opinion states the case and material facts.
The case was elaborately and ably argued by

*Enoch Foster*, for the plaintiff, and

*Bisbee and Hersey*, for the defendants.

APPLETON, C. J. This is a bill in equity by which the complainant seeks to have the discharge of a mortgage cancelled, and the discharge being cancelled, that the mortgage remain, as against these respondents, a subsisting incumbrance upon the mortgaged premises.

On September 10, 1874, Marcellus J. Davis, one of the respondents, and the husband of the other, mortgaged the premises in controversy to the South Paris Savings Bank, to secure the payment of a note for four hundred and fifty dollars.

On November 30, 1877, Clarence A. Davis obtained judgment against Marcellus J. Davis, and caused his equity of redemption of the mortgaged premises to be sold on execution, and George C. Wing became the purchaser of the same for eighty-five dollars.

In this state of the title, the complainant, on the seventh of March 1878, purchased the farm in question of Marcellus J. Davis for eight hundred thirty-four dollars and ninety-six cents, and took from him a quitclaim deed of the same, paying him at the time two hundred and sixty-three dollars and forty-six cents, and thirty-six dollars as interest due on the mortgage note. The balance of the price was the mortgage note which he was to pay and the amount of the claim of Clarence A. Davis, which was called eighty-five dollars and fifty cents.

On the same seventh of March the complainant bargained the premises to Alvin How, giving him a bond for the conveyance of the same for the consideration of nine hundred and sixty-one dollars and thirty-four cents.

On the twenty-first of the same March the complainant conveyed by deed of warranty the premises to Mary A. Kinsley, his daughter, which was recorded. But this deed can have no effect on the result, because it was never delivered and his daughter conveyed back all her right by deed of quitclaim on the eighth of December, 1879.

On the twenty-first of November, 1878, the complainant, through his agent, pays the note due the South Paris Savings Bank and the mortgage was discharged by George A. Wilson, its treasurer, and the note surrendered.

On November 30, 1878, the equity of redeeming from the sale of the equity to. Wing expired and on the twenty-first of the following December, he quitclaimed his interest to Nancy E. Davis, wife of Marcellus J. Davis, for the amount due.

The question for determination is whether the purchaser of the equity of redemption or his grantee shall hold the estate discharged of the mortgage without paying the mortgage debt, to which by the purchase itself, the equity was subject. It is true the mortgage has been discharged, but not by the owner of the equity. The law seems well settled that where the discharge is the result of fraud or mistake, a court of equity will decree its cancellation when it can be done without interfering with or infringing upon the just rights of parties interested. " The principle," observes BENNETT, J., in *Bullard* v. *Leach*, 27 Vt. 495, "which it seems may be abstracted from the cases is, that when money due upon a mortgage is paid, it may operate to cancel the mortgage, or in the nature of an assignment of it, placing the person who pays the money in the shoes of the mortgagee, as may best subserve the purposes of justice and the just and true interest of the parties. The purpose, however, must be innocent and injurious to no one."

The evidence in this case is very voluminous and contradictory. The result of an examination of the testimony seems to be this: The complainant, a feeble, infirm and ignorant old man, hardly competent to the transaction of business, sent an agent with the money to the savings bank holding the mortgage, telling him to have the mortgage " discharged" to him, and made

running to him so that he could hold the property and that G. A. Wilson, the treasurer of the bank, would know how it should be done. The agent paid the money and returned with the mortgage discharged. The next day, when the complainant saw what had been done he was dissatisfied and sent his daughter, Mrs. L. Barron, to have the discharge stricken out and the mortgage assigned — but nothing was done, the treasurer being absent. In a week or two after, he sent a messenger again for the same purpose, but the treasurer declined complying, doubting his right to do so and there the matter rested. The discharge was never entered of record.

The claim of the holder of the equity is most inequitable. He purchased subject to an existing incumbrance. The price is based upon its existence and probable enforcement. He has no equity as against this complainant that they should be removed. It matters not to him to whom the incumbrance is paid. If the complainant cannot set up this mortgage, injustice is done him. The payment is a total loss. But if the discharge be cancelled, the holder of the equity is bound to pay only what by the very terms of the purchase he was to pay.

The purchaser from Wing is in no better condition than he would have been. She took a naked release. The price paid was only that for which the equity was sold with interest and taxes. She paid nothing upon the ground that the mortgage was discharged. The title conveyed was equitably subject to the mortgage. The records show no discharge, and it may fairly be inferred that she and her husband, who acted as her agent, were conusant of all the facts.

The authorities are decisive that in a case like this courts of equity will cancel a discharge made by mistake, no rights of third persons having intervened. 2 Jones on Mortgages, § 966 ; Bruce v. Bonney, 12 Gray, 107.

The question has been fully discussed in Cobb v. Dyer, 69 Maine, 494, and it was then held that where the discharge of a mortgage was through accident, mistake or fraud, the court would afford relief by cancelling the discharge and giving effect to the mortgage. In Wilson v. Kimball, 27 N. H. 300, where

A, the purchaser of land, paid a subsisting mortgage upon the same, and it was duly discharged both upon the mortgage and the record, and B, the assignee of another but subsequent mort-gage, brought a suit against A to recover the premises. Held, that the mortgage paid by A might be treated as assigned to him and not discharged; and that under it he could successfully defend against B until B should pay him. It was decided in *Bell* v. *Woodward*, 34 N. H. 91, that where there are two mortgages on land, and a purchaser of the equity of the first mortgage takes an assignment, that mortgage is not extinguished, but will be upheld as a subsisting security in the hands of the assignee against the second mortgage. Although the mortgage is in fact paid, yet equity will require it to subsist until every party who owes a duty under the mortgage shall have discharged it. *Wheeler* v. *Willard*, 44 Vt. 640.

And this is so, though there has been a receipt of the debt and a cancellation of the mortgage. *Robinson* v. *Leavitt*, 7 N. H. .95.

The court will see that a party is protected who has given up his note and taken in payment a worthless check. *Grimes* v. *Kimball*, 3 Allen, 518.

The payment of a debt by one having an interest to protect, may operate as an assignment even though the mortgage be for-mally discharged. *Rigney* v. *Lovejoy*, 13 N. H. 252.

Payment of a debt secured by a mortgage may operate as a discharge or an assignment as may best subserve the purposes of justice, even though the mortgage be formally discharged. *Wilson* v. *Kimball*, 27 N. H. 301.

It is undoubtedly true that an assignment of a mortgage to one who had assumed its payment, would not avail as against the party with whom the agreement to pay was made. The com-plainant, had the assignment been made and the notes been trans-ferred, could not enforce either as against Davis, his grantor. As between them the note is part of the purchase money of the estate. It was as to him paid and could not be enforced against him. But this principle is not applicable to the case at bar. As between the complainant and the purchaser of the equity of

redemption, he was neither bound to pay the note nor procure the discharge of the mortgage. Wing had no equity to require him to pay the mortgage debt, nor has his grantee, who acquired no greater rights than he had. Purchasing an equity of redemption he has no legal nor equitable rights to have a mortgage held as paid, to the payment of which he has not contributed a farthing.

*Bill sustained with costs.*

DANFORTH, VIRGIN, PETERS, LIBBEY and SYMONDS, JJ., concurred.