FRANK B. RICHARDSON *v.* WILLARD S. RICHARDSON, AMDR., ET AL.
Special Term at Rutland, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed February 6, 1940.

*Frank E. Barber* and *F. Elliott Barber, Jr.,* for the defendants.

*Neil D. Clawson* and *Edward C. Barry* for the plaintiff.

JEFFORDS, J. This suit was commenced as an action at law by the within defendant Willard S. Richardson as administrator of the estate of his mother, Edith M. Richardson, against the within plaintiff, Frank B. Richardson, for an accounting under P. L. 1894. The defendant therein then moved that the action be amended into a suit in chancery. In support of and as a part of said motion he filed a bill in equity naming as defendants Willard as said administrator, and individually, and also the other three children of Edith and himself. The court ordered that the suit at law be transferred into chancery and that the issues therein raised be heard and determined in connection with the issues raised by the bill in equity. The defendants answered and hearing was had before the chancellor who found the following facts herein material.

In 1892 the plaintiff and Velonica McPherson purchased a farm for $4300. The plaintiff paid $1150 of the purchase price and Velonica the balance. He gave Velonica his note for $1000 to make up the difference and he and his wife Edith gave Velonica a mortgage on plaintiff's undivided half interest in the farm to secure said note. The plaintiff and his wife moved on the farm

and lived there together until her death on April 29, 1921. The plaintiff has operated the same from the date of its purchase to the time of hearing.

On January 2, 1899, Velonica conveyed her undivided one half interest in the said farm to the said Edith for $1500. On the same day the plaintiff and his wife Edith executed a negotiable promissory note bearing interest at 5% to Velonica for $2500 and they executed a mortgage on the whole of said farm to secure the note which represented the purchase price of Edith's interest in the same plus the $1000 which the plaintiff was owing on his note before mentioned.

In 1911 the note and mortgage were discharged and new ones in the same amount were given. On December 12, 1918, a new note for the same amount and a new mortgage on the same premises were given by the plaintiff and Edith and those of 1911 were discharged.

Velonica died testate in September, 1932. Pursuant to the provisions of her will the said note and mortgage of 1918 were decreed to the plaintiff. The executor transferred and assigned the note to the plaintiff and delivered the same with the mortgage to him in July, 1933.

The relations between the plaintiff and his children were pleasant until some time in April, 1937, the chancellor apparently taking the last day of the month as a basis for his computations. The children lived at home on the farm in question until they became of age or were married. In 1937 defendant Willard was appointed administrator of the estate of his mother and brought the suit before mentioned for an accounting against his father as co-tenant in the undivided one half interest in the farm owned by Edith at the time of her death. In 1938 the plaintiff Frank filed a petition in the probate court having jurisdiction of Edith's estate asking that commissioners be appointed to set out a homestead to him in said undivided one half interest. At the time of the hearing no homestead or other interest of the plaintiff as surviving husband of Edith in the real estate owned by her at her decease had been set out, decreed or otherwise ascertained.

The plaintiff from the time of the death of Edith has received all of the income from the entire farm and has paid all of the

operating expenses of the same including taxes and insurance and has spent a considerable sum for repairs and improvements. The chancellor found in effect that there was a mutual understanding and arrangement between the plaintiff and the defendants that the plaintiff should have the entire income from the farm and that this arrangement .continued from the time of Edith's death until the trouble started in April, 1937. He also found that the defendants have waived and are estopped from claiming any accounting from the plaintiff for the use and profits of the farm between said times.

In an accounting from April, 1937, to the time of hearing the chancellor acted on the basis of a one third ownership in the plaintiff, including his homestead right, in Edith's undivided interest and a two thirds ownership in the entire farm with the remaining one third of the same in the defendants. With debits and credits figured on this basis small amounts were found due from the plaintiff to each of the defendants.

A decree was entered ordering the plaintiff to account to the defendants for said amounts and it was also ordered that the defendants be foreclosed of all equity of redemption in the said farm unless they pay within one year the sum of $2103.75 for the benefit of the plaintiff together with the taxable costs.

The defendants appealed from this decree and also filed a bill of exceptions. The questions briefed by the defendants may be divided into two classes. First: Were the note and mortgage discharged and all liability under them extinguished by virtue of the fact that the plaintiff received the same as a legacy from the payee and holder? Second: If not, did the chancellor correctly compute the amount due from defendants on the note and also so compute the amounts to be accounted for by the plaintiff?

In order to answer the first question it is necessary to determine the nature of the title to the farm in Frank and Edith after the deed from Velonica to Edith and also their status on the note given by them to Velonica.

■■ It appears from the deed to Frank and Velonica that they were owners of the farm as tenants in common. Consequently by the deed of her undivided one half interest to Edith the latter became the owner as tenant in common with her husband Frank and not a tenant by the entirety with him, their

interests having been obtained at different times and by different instruments. 13 R. C. L. 1108, sec. 130; 30 C. J. 562, sec. 91; *Isley* v. *Sellars*, 153 N. C. 374, 69 S. E. 279. See, also, *McClary* v. *Bixby*, 36 Vt. 254, 84 Am. Dec. 684. As tenants in common each pledged his interest in the land, as security for his moiety of the debt, and each was, as between themselves, surety for the other for such other's portion of the debt, although they were joint principals in their note to the creditor. *Benton* v. *Bailey*, 50 Vt. 137, 141.

As to that part of the note which represented the purchase price of Edith's interest she, in equity, stood as the principal and Frank as her surety. *Stevens* v. *Goodenough*, 26 Vt. 676, 683.

There is nothing in the record from which it can be inferred that Velonica intended other than that Frank should receive the full benefit of her bequest to him. Poland, C. J., in *Holmes* v. *Holmes*, 36 Vt. 525, at 531, says:

> "Ordinarily when a testator makes a bequest or devise to another, it is presumed he intends to confer a benefit; to make the devisee the object of his bounty; and not to make him a mere trustee for another's benefit, and that he intends a benefit as extensive and valuable as the thing given by the devise; and the intent to make him hold for the benefit of another, or the gift less than the thing devised, must affirmatively appear from some provision of the will."

It seems that the inquiry is, then, whether, in spite of this intention, the law requires an affirmative answer to the first question. We hold that it does not.

In *Enscoe* v. *Fletcher*, 1 Cal. App. 659, 82 Pac. 1075, A and B were the joint makers of certain notes. C was the payee and holder at the time of his death. A was an heir of C and received the notes in the distribution of C's estate. B had died and A brought suit against B's estate on the notes. The defendant claimed that the notes were paid and the obligation under them extinguished by operation of law by death of the payee and the distribution of his estate including the notes to A, a joint maker of the same. The opinion shows an exhaustive study of the vari-

ous methods by which obligations on notes may be extinguished and it was held that none of them applied to the situation there as far as B's liability on the note was concerned but that A's liability for one half the amount due on the notes was extinguished by operation of law. It is true that the opinion had to do largely with the construction of the various sections of the California Code but we think that the principles therein enunciated and the result reached apply to the situation here.

■■ The instant case is even stronger in favor of the plaintiff's contention. As we have already seen, Frank was, in equity, surety for Edith's share of the note. This is admitted by the defendants in their brief. A release by the holder of a negotiable instrument of the surety does not affect his right as against the person primarily liable on the same. *Farmers and Mechanics' Bank* v. *Rathbone,* 26 Vt. 19, 31, 58 Am. Dec. 200. This rule of law has not been changed by the Uniform Negotiable Instruments Act; 8 Am. Jur. 453, sec. 804. No other possible method of discharge of a principal debtor enumerated in the Act, P. L. 7259, formerly G. L. 2988, suggests itself in the case. It follows that the plaintiff received the note with only his liability thereunder discharged and with the rights of a holder of the same as to the remainder to proceed to enforce the security of the mortgage against the defendants in respect to such remainder. This was in effect the holding of the chancellor on this point.

The case of *Holmes* v. *Holmes,* 129 Mich. 412, 89 N. W. 47, 48, 95 Am. St. Rep. 444, also strongly supports our conclusions and refutes the position of the defendants that because the plaintiff paid nothing for the note and mortgage the same cannot be made a basis of a claim against them. This case had to do with the foreclosure of a mortgage by tenants in common against their co-tenants. There were four mortgages placed on the common property each in the same amount and apparently given severally by each of the co-tenants. The mortgage sought to be foreclosed was given by the plaintiff's father. After the death of the mortgagor the mortgagee assigned the mortgage to plaintiffs. The defendants claimed that the plaintiffs had purchased the mortgage and asserted that they could not take title to the same as against their co-tenants. The Court construed the assignment as a gift rather than a purchase. The Court recognized the gen-

eral rule that, if tenants in common become purchasers of an outstanding title or encumbrance, the benefit of such purchase is to be shared with their co-tenants and said that under the great weight of authority this rule applies to encumbrances as well as to adverse titles. It held that the rule did not apply to the case at hand and, in effect, that the gift of the mortgage inured to plaintiffs' benefit alone. The Court says in the course of its opinion:

> "No hardship is worked to these defendants by the transfer of this mortgage from the mortgagee to the complainants; and there is no justice in saying that these complainants, the natural objects of the mortgagee's bounty, should, of all the world, be excluded from accepting it."

The Court then decreed that the defendants might discharge the lien as to their interest by contributing their proportion of the amount remaining due upon the mortgage.

See, also, *Waterman* v. *Alden,* 143 U. S. 196, 12 Sup. Ct. 435, 36 L. Ed. 123, as indicating the right of one receiving by legacy a joint note on which he is a maker to hold the same for his own benefit.

■■ The defendants do not make any special claim in their brief that the mortgage merged with the fee. In view of the extent of their claims generally on this question of discharge we have examined that subject. It is held that a mortgage upon the property which is purchased by one of the co-tenants does not merge with the fee but inures to the benefit of the other co-tenants when they contribute their proportion of the purchase money. 14 Am. Jur. 120, sec. 51; Ann. 46 A. L. R. at page 336, sec. d. See, also, *Wheeler* v. *Willard,* 44 Vt. 640. No intention to merge can be inferred and it is certainly for the best interests of the plaintiff that the two estates be kept separate. We can see no reason why the rule should be applied differently in cases of gifts than of purchases.

The authorities cited by the defendants in their brief in regard to contribution are not in point as the case is not one to which such doctrine applies.

The defendants claim that the aforementioned amount of $2103.75 was erroneously computed. It appears that the plaintiff

after the death of Edith paid Velonica interest on the full amount of the note to December 12, 1931. In computing the above amount the chancellor deducted from the $2500 face amount of the note the $1000 share of the plaintiff and took the balance of $1500 together with interest on the same from December 12, 1931, to December 12, 1938, in reaching the total arrived at. By subtraction it is seen that of this amount $603.75 is interest.

The defendants also complain of the item of $134.61 allowed the plaintiff in the accounting. This amount was arrived at by the chancellor as follows: He found that from the time of the death of Edith to December 12, 1931, the plaintiff had paid as interest to Velonica an amount which with interest thereon came to $2199.50. He apportioned two-fifths of that amount against the plaintiff and three-fifths or $1319.70 against Edith's share of the note. He then computed interest on this latter amount from April, 1937, to December 12, 1938, at said sum of $134.61 and allowed it to the plaintiff as before indicated. It is difficult to understand why this interest should be so credited and not the principal on which it is figured. But passing over this question and all others relating to the correctness of the two said interest amounts we come to the question of whether any such claimed interest should have been allowed the plaintiff under the circumstances here disclosed.

■ Claims of this kind are equitable in their nature. *Stewart* v. *Stewart,* 90 Wis. 516, 63 N. W. 886, 48 Am. St. Rep. 949; *Appeal of Wistar,* 125 Pa. 526, 17 Atl. 460, 11 Am. St. Rep. 917.

■ Under the findings of agreement and estoppel the plaintiff was held entitled to all the use and profits from the farm from the time of the death of Edith to April, 1937. It does not seem equitable and just so to construe the arrangement entered into as to give to the plaintiff all of the benefits coming from the use and occupation of the farm without requiring that he bear the burden of all the charges properly incident thereto; although in a given case special circumstances not here appearing might in all equity require a modification of such a rule.

■ Though the defendants were not ousted co-tenants during the time in question as claimed by them it seems that by analogy the rules laid down in such cases apply here. The general rule is that when a tenant who has ousted his co-tenants

is charged with rents or profits he should be credited with payments on encumbrances, taxes, insurance and repairs. 14 Am. Jur. 105. See, also, Annotation 27 A. L. R. at page 252 and Annotation 39 A. L. R. at page 409, to the effect that payments on interest on encumbrances is a proper charge to be claimed by the tenant against rents and profits. It is true that the interest claims of the plaintiff are not for sums paid out but the principle involved is the same.

We hold that the item of $134.61 was of such a nature as to be a proper carrying or operating charge against the use and occupation of the farm and that the same is true as to that part of the item of $603.75 which represents interest from December 12, 1931, to May 1, 1937, and consequently the plaintiff is not entitled to credit for either. We wish to add, that without attempting to compute with the utmost accuracy the various amounts set forth in the findings it appears the plaintiff gained sufficiently during the time he had all the use and profits so that he suffered no financial loss during such time in operating the farm even though not allowed the aforesaid credits.

The last question to consider is whether the chancellor was right in holding that the entire $1500 principal should be included in the amount that the defendants be required to pay to redeem. While the plaintiff had the right to subject the mortgage security represented by Edith's one half undivided interest to the payment of said $1500 he could not require that the defendants pay of the same for redemption more than in equity they were bound to pay. Such sum must be measured by the extent of their interest subject to the payment of said amount in such undivided one half. The plaintiff in turn must bear the burden of the mortgage as to his portion of said one half subject to said payment. Under the order the defendants were required to pay all. If this order were complied with the plaintiff would receive the full amount of the mortgage note allocated to this portion of the farm and in addition his share in the latter free and clear of the encumbrance. This might result in his unjust enrichment, for the plaintiff cannot receive his homestead in said portion free of the encumbrance placed upon it by Edith and himself unless the mortgage included lands other than the homestead in Edith's undivided one half of sufficient value to pay her said part of the

mortgage debt without subjecting the homestead to the payment of the same.  P. L. 2570, formerly G. L. 2717 as amended by sec. 3 of No. 74, of the Acts of 1921.

In order to determine with exactness the amount that the defendants be required to pay it is necessary to first determine the values of the proportionate parts of said undivided one half subject to the payment of the mortgage debt which they and the plaintiff own. This fact cannot be determined until the value of said one half has been ascertained.  From such ascertained amount  the statutory value of the plaintiff's homestead in said one half must be deducted.  The difference would represent the value of lands other than the homestead included in the mortgage.  If any such value be found and it is sufficient to satisfy the mortgage debt it must be held to such satisfaction.  The plaintiff and the defendants must bear their shares of the burden in proportion to the amount of their interests in such value as surviving husband and heirs, respectively, of the deceased Edith. Such interests are to be determined in accordance with the law in force at the time of her death.  16 Am. Jur. 786, § 20; 18 C. J. 808, § 6.  If there be no such value or if it is not sufficient to satisfy the debt, then the homestead must bear the deficiency to the homestead's full extent, if necessary, under the provisions of P. L. 2570.  The court of chancery can determine these required matters of law and fact for the purposes of this case without infringing upon the jurisdiction of the probate court.

It should be noted that the plaintiff is entitled to the full statutory value of $1000.00 as his homestead interest in Edith's said one half under the holding in *McClary* v. *Bixby*, *supra*.  This was the amount provided by the statute in force at the time of Edith's death, sec. 1 of No. 74 of the Acts of 1921, and such is the law that governs, 29 C. J. 1010, § 500.  There has been no change in the homestead law as it was at the time of the decision in the *McElroy* case such as in our opinion warrants a departure from said holding.  ·

When there has been a determination of the necessary facts and matters the defendants will be entitled to redeem by paying their proportionate share of the $1500.00 with interest thereon at 5% from May 1, 1937.

In view of our disposition of the case we think it well to refer to the basis taken by the chancellor in the accounting heretofore noted, although no exceptions were taken to the same. This basis may or may not have been accurate. If the value of plaintiff's homestead in Edith's one half was less than or equalled one third of the value of such one half it was correct, otherwise not. These values can and should be determined for the purpose of the accounting as well as for ascertaining the amount of redemption payment.

*Decree reversed and cause remanded for further proceedings in accordance with the views herein expressed.*