2011 VT 97

**Debra L. WHIPPIE v. Robert O'CONNOR**

[30 A.3d 1292]

No. 10-419

¶ 1. August 15, 2011. This is defendant's second appeal in a partition action brought by his former girlfriend to resolve the parties' respective interests in a house they hold as tenants-in-common. On remand following the first appeal, the trial court determined that defendant had ousted plaintiff from their property in August 2004 by sending her a no-trespass letter. On appeal, defendant argues, among other things, that (1) there was no ouster, and (2) if there was ouster, the court erred in failing to properly account for plaintiff's failure to pay towards maintenance of the property during the ouster period. We reverse and remand.

¶ 2. The basic facts are set forth in this Court's first decision involving this dispute. *Whippie v. O'Connor (Whippie I)*, 2010 VT 32, 187 Vt. 523, 996 A.2d 1154. The parties had had a ten-year relationship and two children together when they purchased a single-family residence together in 2002. Both parties were obligated on the mortgage, and both their names appeared on the deed. In the beginning, the parties agreed to share expenses equally; however, plaintiff stopped paying her share of expenses in early 2003. In January 2004, the parties separated, and plaintiff filed a relief-from-abuse petition. The temporary order gave plaintiff possession of the home, but the final relief-from-abuse order, issued in March 2004, granted possession of the home and parental rights and responsibilities of the parties' two children to defendant.[1] *Id.* ¶ 5. The final relief-from-abuse order expired by its terms in August 2004. Shortly thereafter, defendant sent plaintiff a no-trespass letter because he believed she was entering the home and taking items. He consistently refused her access to the property.

_____

[1] At the same time, the family court issued a temporary order on parental rights and responsibilities reflecting the same terms. *Whippie I*, 2010 VT 32, ¶ 5.

¶ 3. In January 2005, plaintiff filed this partition action. She sought public sale of the property and an equitable division of the proceeds. Following a bench trial, the court found that defendant's letter was in the nature of ouster, but did not make findings as to exactly when the ouster occurred or explain the evidence upon which the ouster award was based. The parties disputed the extent to which plaintiff had contributed to payment of household expenses. The court found that defendant had paid all of the mortgage and tax payments on the property, but plaintiff had contributed to some other property expenses. *Id.* ¶ 8. Ultimately, the court granted plaintiff $15,216, representing forty percent of one-half of the $46,081 equity in the home plus an additional $6000 for some part of the "element of ouster" and in recognition of the fact that plaintiff's income was necessary to qualify for the home financing.

¶ 4. Defendant appealed. This Court affirmed the court's findings that plaintiff initially acquired an equal share in the property, that she ceased contributing to expenses in early 2003, and that defendant's letter of no-trespass excluded her from the property. We remanded for an accounting of the parties' interests in the property based on their relative contributions, directing the court to determine the parties' shares and instructing the court not to credit plaintiff for certain expenses. We also instructed the court to determine if defendant's exclusion through the no-trespass letter was unlawful and, if so, whether there was sufficient evidence to determine when ouster occurred and to calculate an offset of rental value.

¶ 5. On remand, the court reconsidered the issues without an evidentiary hearing. Because plaintiff stopped contributing to residential expenses in April 2003, the court deducted half of the costs of the mortgage, tax and insurance payments for the property from the period of April 2003 to August 2004 from plaintiff's share

of the value of the property. As to ouster, the court held that plaintiff was wrongfully excluded from the property by defendant's no-trespass letter. The court determined there was sufficient evidence to demonstrate that this ouster occurred in August 2004. The court did not deduct contribution costs from plaintiff's share after the ouster occurred. The court granted plaintiff an offset of $19,351, representing half of the rental value for the period of ouster — from September 2004 to September 2007. Including the offset credited to plaintiff as a result of the ouster, the court awarded plaintiff 61% of the property's value. Defendant appeals.

¶ 6. At the outset, we reject two arguments made by defendant throughout his brief — that the court erred in denying his request to submit additional evidence and in crediting plaintiff's evidence over his own. We find no error in the court's decision not to conduct an additional evidentiary hearing. Our first decision directed the court to make a determination on the current record of whether defendant's exclusion action was wrongful and, if so, to determine duration and value. *Whippie I*, 2010 VT 32 mandate. Furthermore, as we explained in *Whippie I*, it is within the trial court's discretion to judge the credibility of witnesses. *Id.* ¶ 12. As long as the court's findings are supported by the evidence, we will affirm them on appeal. *Id.*

¶ 7. In addition, we do not reach some of defendant's arguments because they were already decided by *Whippie I*. Under the law-of-the-case doctrine, questions necessarily involved and already decided by that decision will not be revisited in this second appeal. *Coty v. Ramsey Assocs.*, 154 Vt. 168, 171, 573 A.2d 694, 696 (1990). That doctrine applies to legal issues resolved as well as "to fact questions where there has been no new evidence." *Id.* In this case, some of defendant's arguments are precluded on this basis. First, related to ouster, defendant claims

that he had insufficient notice of plaintiff's ouster claim at trial because she did not include an ouster claim in her original complaint. In *Whippie I*, we addressed the ouster question, implicitly rejecting defendant's lack-of-notice argument. 2010 VT 32, ¶¶ 19-23. We do not reexamine it in this appeal. Second, defendant argues that plaintiff did not contribute at all to maintenance of the property. Because *Whippie I* affirmed the court's finding that plaintiff contributed to household expenses during the first year, this matter is settled and that factual question is resolved for purposes of this appeal. *Id.* ¶ 14.

¶ 8. Defendant's remaining arguments are that the court erred in (1) concluding that his letter to plaintiff amounted to ouster where a family court order had granted him possession of the home; (2) finding that there was sufficient evidence to demonstrate ouster occurred in August 2004 and to set a reasonable rental value; and (3) failing to deduct from plaintiff's share her lack of contribution to the property's necessary maintenance costs during the ouster period.

¶ 9. Defendant argues that there was no ouster in this case because his right to reside in the house was established by an existing family court order regarding parental rights and responsibilities of the parties' children and possession of the residence. Plaintiff argues that the argument was waived because the family court order was not admitted below and is therefore not part of the record on appeal. Introduction of the order itself is of no moment. However, even accepting defendant's version of the facts, the family court's grant of occupancy to defendant did not preclude a finding of ouster. A family court deciding issues of parental rights and responsibilities for children of unmarried couples has no jurisdiction over property division. *Rogers v. Wells*, 174 Vt. 492, 494, 808 A.2d 648, 650 (2002) (mem.) (explaining that family court has

no statutory jurisdiction over the separation of unmarried parents outside parentage proceedings).

¶ 10. Defendant next contends that there was insufficient evidence to support the trial court's finding that he ousted plaintiff from the jointly owned home in August 2004 and that damages resulted. We will affirm the court's findings if they are supported by credible evidence, including testimony based on personal knowledge. See *Whippie I*, 2010 VT 32, ¶ 12. We conclude that there was sufficient evidence to support the court's findings. Defendant testified at trial that he remembered sending a no-trespass letter to plaintiff and that he likely did it in August 2004, although he was unsure of the exact date. Given defendant's admission, there was no requirement that the actual letter be admitted. The court did not abuse its discretion in relying on and accepting defendant's testimony to find that an ouster occurred in August 2004.

¶ 11. In addition, we reject defendant's argument that plaintiff offered insufficient evidence to demonstrate the amount of offset to which she was entitled as a result of ouster. At trial, plaintiff submitted exhibits depicting the U.S. Department of Housing and Urban Development's fair market rent in the area to establish a fair rental value. While defendant objected to admission of the exhibits at trial because he did not believe any ouster occurred, he did not otherwise object to this evidence or offer any countervailing evidence of rental value. The court admitted the exhibits conditioned on a finding of ouster, and defendant did not object. Therefore, defendant failed to preserve any objection to the validity or authentication of these exhibits, and we do not consider the issue on appeal. See *In re Estate of Peters*, 171 Vt. 381, 390, 765 A.2d 468, 475-76 (2000).

¶ 12. We turn then to the court's accounting. Defendant argues that the court incorrectly proportioned the equity

in the property, and that he should have received a greater share. He also claims that plaintiff's assertion of contribution to household expenses is not credible, but because this matter was previously decided, we do not address it. *Whippie I,* 2010 VT 32, ¶ 14. We do, however, find merit in defendant's arguments regarding the court's accounting of maintenance costs. Pursuant to the court's findings, plaintiff ceased contributing to any expenses related to the property after April 2003. The court deducted from plaintiff's share the expenses accrued between that date and August 2004 when the ouster occurred, but not afterwards. We conclude that this was error.

¶ 13. A review of our law on this point is instructive. In *Massey v. Hrostek,* we set forth the general law regarding allocation of property in partition actions. 2009 VT 70, 186 Vt. 211, 980 A.2d 768. Our law on joint tenancies, 27 V.S.A. § 2(b)(2)(A), establishes a statutory presumption that joint tenants will share equally. *Massey,* 2009 VT 70, ¶ 17. Allocation is then based on the principle that all tenants share equally in the burdens and responsibilities of ownership and therefore "a cotenant who pays necessary maintenance costs associated with jointly owned property is entitled to a setoff for the other tenant's portion of those costs." *Id.* ¶¶ 21-22. Discretionary improvements are compensable only to the extent there is a resultant increase in fair market value, subject to certain conditions. *Id.* ¶ 23. Finally, "a cotenant who ousts his cotenant from possession and enjoyment of the property will have his share of the partition proceeds set off by the rental value of the ousted cotenant's interest for the period of the ouster." *Id.* ¶ 24. We affirm these principles today.

¶ 14. The ensuing discussion in *Massey* went further, however, and stated that "the cotenant who excludes his cotenants from possession and enjoyment of the jointly owned property is not entitled to

credit for costs incurred, for either maintenance *or* improvements, during the period of the ouster." 2009 VT 70, ¶ 25. To the extent that this statement precludes a tenant in possession from claiming contribution for necessary maintenance costs such as mortgage, taxes and insurance during the period of ouster, it is overruled.[2] This statement was contrary to prior Vermont law, which followed the "general rule" that "when a tenant who has ousted his co-tenants is charged with rents or profits he should be credited with payments on encumbrances, taxes, insurance and repairs." *Richardson v. Richardson,* 111 Vt. 140, 149-50, 11 A.2d 227, 231 (1940). *Massey* did not explicitly overrule *Richardson,* nor did it discuss why a change in the general rule was necessary or prudent from a public policy perspective.

¶ 15. Other than *Massey* and the sole case cited therein, plaintiff cites no law in support of her position that her ouster entitles her to a double benefit of ouster — half the rental value plus no contribution for the maintenance costs of the property. As explained, to the extent that *Massey* condoned such accounting it is overruled. In addition, the case cited for this point in *Massey, Rinehart v. Schubel,* 2002 ME 53, 794 A.2d 73, does not support that proposition. In *Rinehart,* the court held that the tenant in possession was not entitled to contribution from the excluded tenants for "improvements, maintenance, insurance and taxes" because these costs were offset by the value of the tenant's exclusive possession. 2002 ME 53, ¶ 11. There was no double recovery, however, because the excluded tenants were relieved of their obligation to

---

[2] We acknowledge that *Massey* was a recent decision and we do not "lightly overturn recent precedent," *O'Connor v. City of Rutland,* 172 Vt. 570, 570, 772 A.2d 551, 552 (2001) (mem.), but the law as stated in *Massey* is incorrect and the error should not be perpetuated.

contribute to the maintenance of the property, but also received no rental value to compensate for the exclusion. As explained more fully elsewhere in the opinion, there was no need for reimbursement because the "periods of exclusive possession of the [property] equalled in value [the tenant in possession's] expenditures on the property so that [the excluded tenants] need not reimburse him for maintenance, insurance or taxes." *Id.* ¶ 4.

¶ 16. In fact, the great weight of authority is that an ousted tenant is entitled to the reasonable rental value of their portion of the property, but is still responsible for "their share of the necessary property maintenance expenses after ouster." *Yakavonis v. Tilton*, 968 P.2d 908, 912 (Wash. Ct. App. 1998); accord *Wood v. Collins*, 812 P.2d 951, 958 (Alaska 1991) (explaining that excluded cotenant who paid all of the maintenance costs was entitled to half of the rental value and credit for half of the maintenance payments); *First Nat'l Bank of Denver v. Groussman*, 483 P.2d 398, 402 (Colo. App. 1971) (deducting maintenance costs from rental value); *Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi*, 942 A.2d 21, 28 (N.J. Super. Ct. App. Div. 2008) (reciting rule that ousted tenant may receive rental value minus maintenance payments made by tenant in possession); *Sirianni v. Sirianni*, 221 N.Y.S.2d 693, 699 (App. Div. 1961) (explaining that excluded tenant "may recover from his co-tenant his just proportion of the rents and profits of the property so held," but "the court may take into account and charge against receipts, the carrying charges of the property"); *Kerney v. Kerney*, 386 A.2d 1100, 1103 (R.I. 1978) (awarding no contribution expenses to tenant in possession

where rental value offset these costs); *Parker v. Shecut*, 597 S.E.2d 793, 797 (S.C. 2004) (explaining that ouster damages are rental value minus allowable expenses). It is entirely reasonable that ousted tenants remain obligated to contribute to maintenance costs because these are required to preserve the property, which is in the interest of all tenants. *Groussman*, 483 P.2d at 402. While the ousted tenant receives the value of reasonable rent to compensate for the loss of occupancy, that tenant retains an interest in the property's equity and is responsible for preserving it through payments for mortgage, taxes and insurance. If the tenant in possession had failed to make the payments, "all interests of both tenants might have been lost." *Id.* If the occupying tenant continues to preserve the value of the asset for all tenants through ongoing maintenance, then that tenant is entitled to credit for these payments. Such a rule comports with the equitable nature of a partition action and encourages responsible use by the occupying tenant.

¶ 17. Thus, we conclude that defendant was entitled to compensation for half of the maintenance costs he paid for the entire period, even after the ouster. On remand, the court is directed to determine the value of defendant's expenditures on maintenance costs for the period of September 2004 to September 2007. Half of this amount should be deducted from plaintiff's share. Her share should then be credited with the already determined rental value for the ouster period. No new evidence need be taken on these matters.

*Reversed and remanded for further proceedings consistent with this decision.*