NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 18

No. 24-AP-118

| | |
|---|---|
| James Needham | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Roxanne O. Smith Trust 9/15/19 Madelynn Cassin, Trustee | January Term, 2025 |

David R. Fenster, J.

James Needham, Pro se, Lincoln, Plaintiff-Appellee.

Aimee Goddard of Annis & Goddard, PLC, Brattleboro, for Defendants-Appellants.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **CARROLL, J.** This case arises out of a partition action between plaintiff James Needham and defendant Roxanne O. Smith Trust. Plaintiff and Roxanne Smith purchased residential property as joint tenants. Ms. Smith subsequently vacated the property and transferred her interest in it to defendant. After Ms. Smith's death, the parties filed crossclaims for partition. The trial court assigned the property to plaintiff and awarded defendant an equitable sum for its interest in the property. The court declined to offset plaintiff's contributions by the fair-market rental value for the time Ms. Smith left the property, concluding plaintiff did not prevent Ms. Smith from accessing the property and that defendant had not established the fair-market rental value of the property. On appeal, defendant argues the court erred in declining to find ouster under these circumstances and that sufficient evidence was presented at trial to establish rental value. We affirm.

¶ 2.     After a two-day bench trial, the court issued a decision on the merits and made the following findings relevant to the issues on appeal.  Plaintiff and Ms. Smith purchased property in Lincoln, Vermont as joint tenants and moved into the residence with Ms. Smith's two minor children.  About a month or two after moving in, Ms. Smith obtained a temporary relief-from-abuse (RFA) order, and plaintiff was removed from the property "for a period of time."  Ms. Smith left shortly before the temporary RFA order was served.  Ms. Smith returned, but after an argument, vacated permanently.

¶ 3.     Ms. Smith moved into a horse barn with her two children because "she did not feel that she or her children were safe" at the Lincoln property.  The trial court found Ms. Smith was afraid of plaintiff and did not want him to know her new address.  After Ms. Smith left, plaintiff did not change the locks, but he did change the code to one of the two garage-door openers after replacing the keypad.  Ms. Smith kept the garage-door opener that continued to work for one of the garage doors.

¶ 4.     Ms. Smith returned to the Lincoln property a number of times to retrieve her personal belongings, mostly when plaintiff was absent.  On one occasion, Ms. Smith, with the help of friends, went to the property to acquire some of her belongings.  During this time, plaintiff pushed Ms. Smith into the bathroom sink and screamed at her because she had moved some of his things.  Two of Ms. Smith's friends restrained plaintiff, the police were called, and the police remained at the property until Ms. Smith and her friends left.  Ms. Smith returned to the property at least once after this incident occurred.  The trial court found no evidence that Ms. Smith was ever denied access to the property or that she was unable to access it.

¶ 5.     In a partition action, after cotenancy is established, a partitioning court "split[s] the property in half and then consider[s] equitable factors."  Whippie v. O'Connor (Whippie I), 2010 VT 32, ¶¶ 15-16, 187 Vt. 523, 996 A.2d 1154 (noting "presumption of equal contribution and equal interest").  The court first determines "the contributions of each party towards the actual

expenses," then "credit[s] against contribution claims a rental value offset for any period for exclusion of a party ousted from the premises by the cotenants in possession," and then "consider[s] other equities" and allocation of costs arising from partition. Id.

¶ 6. Here, the court assigned the property to plaintiff who in turn was to pay defendant for its interest in the property. See 12 V.S.A. § 5174 ("When it appears that the real estate, or a portion thereof, cannot be divided without great inconvenience to the parties interested, the court may order it assigned to one of the parties, provided he or she pays to the other party such sum of money, at such time and in such manner as the commissioners judge equitable."). The court determined that before offsets from any contributions, defendant was entitled to half the equity in the property, i.e., the fair-market value of the property minus the outstanding loan balance. The court then considered plaintiff and Ms. Smith's contributions to the property, which included actual expenses as well as property maintenance and necessary repairs, to determine the sum owed to defendant. The court found defendant made no contributions to the property. Plaintiff was ordered to pay defendant for its interest in the property, or in the alternative, the court ordered the property be sold, and the proceeds be divided accordingly if plaintiff did not pay defendant.

¶ 7. The court rejected defendant's request that plaintiff's contributions to the property be offset due to plaintiff's ouster of Ms. Smith and her children from the residence. Defendant argued that because "Ms. Smith was genuinely fearful of [p]laintiff and left possession of the [p]roperty because of this fear" she was impliedly ousted from the property and that ouster is imputed to defendant. The court, quoting our decision in Whippie I, 2010 VT 32, ¶ 19, recognized "[o]usted cotenants have a right to the rental value for the period of exclusion, but ouster requires an absolute finding by the trial court that a possessory tenant has asserted rights in conflict with his cotenants." The court concluded that while the evidence established that Ms. Smith left the property out of her fear of plaintiff, there was no evidence that Ms. Smith was ever denied access to the property and defendant had not established plaintiff "asserted ownership of the entire

premises." The court noted that this Court has never recognized ouster under these circumstances "without proof that one party excluded the ousted party from accessing the property," citing Wynkoop v. Stratthaus, 2016 VT 5, ¶ 40, 201 Vt. 158, 136 A.3d 1180.

¶ 8. The court further decided that defendant had not established the fair-market rental value of the property during the period of alleged ouster, as necessary to award the requested offset. The court recognized the trustee testified, without objection, that defendant, if assigned the property, would rent the property for between $2000 and $3000. When asked whether she conducted any research to come to the valuation, the trustee replied that it was difficult because there were not a lot of other properties to compare it to in Lincoln. The court reasoned these statements were insufficient to establish the fair-market rental value of the property because no expert testimony was presented, and the trustee's testimony was offered as defendant's future intention for the property. The court then determined that the foundation of the trustee's opinion was too limited, explaining that there was no testimony about how much research was done or how it was conducted. The court also noted that the trustee's testimony concerning the rent Ms. Smith paid when she left the Lincoln property was "only a general comparison . . . between [the Lincoln] property and the subject of this partition action."

¶ 9. The court also concluded that 12 V.S.A. § 1604 did not extend to rental value. See 12 V.S.A. § 1604 ("The owner of real or personal property shall be a competent witness to testify as to the value thereof."). The court further concluded that even if it did, the court was not required to find "that such testimony has much probative value considering the limited foundation that was laid." The court determined it could not find defendant had established the fair-market rental value of the property "[w]ithout more information about the comparable properties analyzed and the training and experience of the [trustee] to opine regarding the fair market rental value" irrespective of the trustee's competency to testify to the value under § 1604.

4

¶ 10. On appeal, defendant argues that the court erred in concluding plaintiff did not oust Ms. Smith from the property and that our decision in Wynkoop supports ouster under these circumstances. Defendant also asserts it presented sufficient evidence to establish the fair-market rental value of the property.

¶ 11. As the trial court recognized, "[o]usted cotenants have a right to the rental value for the period of exclusion." Whippie I, 2010 VT 32, ¶ 19. We do not reach the issue of whether Ms. Smith was ousted from the property here because we conclude the trial court did not abuse its discretion in finding defendant failed to establish the fair-market rental value of the property during the period of Ms. Smith's alleged exclusion. See id. ¶ 23 (noting if trial court cannot establish duration of ouster on remand based on evidence presented "[the] plaintiff's claim for rental offset must fail"); see also Mobbs v. Cent. Vt. Ry., 150 Vt. 311, 317, 553 A.2d 1092, 1096 (1988) (declining to reach issue of strict liability after determining "there was a lack of evidence as to damages").

¶ 12. Defendant asks the Court however to remand for an additional hearing and opportunity to present evidence on fair-market rental value should the Court conclude Ms. Smith was ousted from the property, entitling defendant to offsets from plaintiff's contributions for the period of exclusion. Defendant cites Fiske v. State Highway Board, 124 Vt. 87, 197 A.2d 790 (1964), to support this proposition. In Fiske, the Vermont State Highway Board condemned land and buildings owned by the plaintiffs. On appeal following a jury trial, the plaintiffs argued the trial court erred by excluding evidence relevant to the plaintiffs' business loss and by refusing to submit the issue to the jury. We concluded that the plaintiffs were entitled to damages on "the amount of business loss sustained in the commendation" of their property, but that the court erred in excluding testimony offered by the plaintiffs because the issue of business loss was for the trier of fact to decide. Id. at 92-94, 197 A.2d at 793-94. Here, defendant does not argue that it had requested or was denied an opportunity to present additional evidence on rental value. Defendant

5

failed to establish damages and does not demonstrate any reason why remand is warranted in this case.

¶ 13. "This Court gives due regard to the opportunity of the trial court to judge the credibility of the witnesses and will accordingly defer to the court's determinations regarding the credibility of witnesses and the persuasive effect of the evidence." Lofts Essex, LLC v. Strategis Floor & Décor Inc., 2019 VT 82, ¶ 17, 211 Vt. 204, 224 A.3d 116 (alterations and quotations omitted) (citation omitted). An opinion of value may be admissible, but the trier of fact is not obligated to assign it any persuasive value. See id. ¶ 23 ("As the trier of fact, it is the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence. Accordingly, a court is not required to credit an expert witness's opinion whenever the witness is qualified to testify as an expert." (alteration and quotations omitted) (citation omitted)).

¶ 14. Here, defendant presented the trustee's testimony that if defendant was assigned the property, the trustee would probably rent it for "somewhere between 2000 and 3000 dollars." When asked whether she had done any research, the trustee replied:

> Yes. It's—it's tricky. I think that [another witness] said something similar, that there's not a lot of property to—to rent or there aren't many places to rent in—in Lincoln. It's mostly, people own homes, and if somebody rents, they stay. So there's not a ton to—to compare it to in Lincoln.

The trustee also testified that Ms. Smith was paying $1100 a month to rent the place she lived in after vacating the Lincoln property.

¶ 15. As defendant acknowledges, this testimony "stood alone as the only direct evidence of rental value." The trial court was well within its discretion to conclude that the foundation for the trustee's valuation was insufficient to support the fair-market rental value of the Lincoln property during the relevant period. Cf. Whippie v. O'Connor (Whippie II), 2011 VT 97, ¶ 11, 190 Vt. 600, 30 A.3d 1292 (mem.) (concluding plaintiff presented sufficient evidence on rental value for claim of ouster by "submitt[ing] exhibits depicting the U.S. Department of Housing and

Urban Development's fair market rent in the area"). The court drew reasonable conclusions from the evidence presented and we see no reason to disturb the court's judgment.

¶ 16. Defendant asserts however that the trial court erred because the trustee was competent to testify to the property's rental value as its owner, and that because the trustee provided a valuation, and that valuation was admitted without objection and not "to rebut any presumption," that valuation alone was sufficient to establish the damages necessary to succeed on a claim of rental offsets for ouster, relying on TransCanada Hydro Northeast, Inc. v. Town of Newbury, 2017 VT 117, 206 Vt. 462, 180 A.3d 834. Regardless of the trustee's competence to testify under § 1604, and the lack of objection or countervailing evidence from plaintiff, the trial court was still not obligated to assign her testimony persuasive value. TransCanada involved a property-tax dispute between a landowner and a municipality and examined the burden-shifting standard applicable in those cases. See 2017 VT 117, ¶ 12 (describing "shifting burdens of production and persuasion that apply in property valuation cases"). The valuation from a landowner may be sufficient to overcome the rebuttable presumption afforded to the municipality's valuation in those cases, but the trier of fact is still not obligated to assign it any probative value. Id. ¶ 29. There is no shifting burden of proof in this case and the fact that plaintiff provided no conflicting valuation of the fair-market rental value or that the trustee testified without objection has no bearing in this case on the trial court's weighing of the evidence.

Affirmed.

FOR THE COURT:

_____

Associate Justice

¶ 17. **COHEN, J., concurring.** I agree with the majority that the trial court did not abuse its discretion in finding that defendant did not present sufficient evidence to establish the fair-market rental value of the property. Ante, ¶ 11. However, I write separately because contrary

7

to the trial court's suggestion in its final order, I believe the significant threat of domestic violence may serve as a basis for ouster.[*]

¶ 18. Ouster is shown through an " 'overt and notorious act or acts of an unequivocal character, indicating an assertion of ownership of the entire premises to the exclusion of the right of the co-tenant.' " Wynkoop v. Stratthaus, 2016 VT 5, ¶ 40, 201 Vt. 158, 136 A.3d 1180 (quoting Whippie v. O'Connor (Whippie I), 2010 VT 32, ¶ 19, 187 Vt. 523, 996 A.2d 1154). While ouster is typically proven through specific acts such as changing locks and issuing no-trespass orders, id.; Whippie v. O'Connor (Whippie II), 2011 VT 97, ¶ 10, 190 Vt. 600, 30 A.3d 1292 (mem.), in my view, acts of serious domestic abuse can also constitute ouster.

¶ 19. Physical violence, domineering control, and patterns of threatened violence and verbal abuse can leave victims fearful for their safety and the safety of any children present in the home. One of the few ways to escape such abuse is to flee the home, even if the victim is a co-tenant of the property. Even if a victim leaves, the risk of continued violence remains, particularly if a victim later returns to the shared home with the abuser, which has a significantly higher likelihood of lethality. J. McFarlane et al., Risk of Behaviors Associated with Lethal Violence and Functional Outcomes for Abused Women Who Do and Do Not Return to the Abuser Following a Community-Based Intervention, 24 J. Women's Health 272, 276 (2015).

¶ 20. A pattern of serious domestic abuse may rise to the level of "overt and notorious acts" asserting ownership of the property to the exclusion of the co-tenant because victims may be forced to leave the home or face continued violence. While the abuser may not be acting with the express goal of exercising control of the property, such control can be implied as it is so "hostile to the rights of the other cotenant." Horne v. Cox, 115 S.E.2d 513, 515 (S.C. 1960). Indeed, other

---

[*] This concurrence should not be taken as implying that plaintiff committed serious domestic abuse against Ms. Smith. I agree with the majority that it was unnecessary to decide whether there was ouster here due to defendant's failure to establish the fair-market rental value of the property.

jurisdictions recognize threats of violence as a possible basis for ouster. See, e.g., <u>Myers v.</u> <u>Bartholomew</u>, 697 N.E.2d 160, 161 (N.Y. 1998) (holding that common law also recognizes "the existence of implied ouster in cases where the acts of the possessing cotenant are so openly hostile that the nonpossessing cotenants can be presumed to know that the property is being adversely possessed against them"); <u>Cardoza v. Machado</u>, 117 P.2d 31, 32 (Cal. Ct. App. 1941) (holding that ouster was established because defendant's threats of violence caused respondents "to fear personal injury if they went upon the ranch premises for any purpose"). For these reasons, I believe Vermont courts should not feel constrained to consider only evidence of lock-changing or affirmative declarations of exclusion when determining whether the presumption against ouster is overcome. Evidence of serious domestic abuse may also support a finding of ouster.

¶ 21.   I am authorized to state that Chief Justice Reiber joins this concurrence.


---
Associate Justice