Filed 09/09/25

VERMONT SUPERIOR COURT

Orleans Unit
247 Main Street
Newport VT 05855
802-334-3305
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 23-CV-03782

---

Heather Morcroft v. Gregory Morcroft et al

---

## FINDINGS, CONCLUSIONS, AND ORDER

Plaintiff Heather Morcroft filed this action in September 2023 seeking an equitable partition of an approximately 30-acre property located at 376 Stephenson Heights in Irasburg. The property was sold pursuant to judicial order in November 2024, and the parties now seek an equitable distribution of the sale proceeds. The case came before the court for a final hearing on June 5, 2025. Heather was represented at the hearing by attorney Carolyn Dube, defendant the Estate of Philip Samis was represented by attorney Ernest Tobias, defendant Gregory Morcroft was represented by attorney Kevin Gustafson, and defendant Rodger Morcroft was pro se. The court hereby orders distribution of the sale proceeds as set forth below.

### Findings of Fact

Catherine Samis, now deceased, is the mother of plaintiff Heather Morcroft and defendants Greg and Rodger Morcroft. Catherine was previously married to Philip Samis, also deceased. Philip's estate is also a defendant.

Greg was appointed Catherine's guardian by the Orleans Probate Division in 2007 and served in that role until Catherine's death on October 25, 2021. Although Greg lives in Brooklyn, New York, he regularly maintained the Irasburg property during his guardianship and until the property was sold. He paid the electric and propane bills, ensured the property was shut down for the winter and reopened in the spring, and performed or arranged for repairs and routine maintenance and lawn care. To this end, he visited the property approximately every 6 to 8 weeks. Heather and Philip's estate paid certain other expenses following Catherine's death, including property taxes for several years and homeowner's insurance.

When Catherine died, she owned a one-half interest in the Irasburg property and her ex-husband Philip Samis owned the other one-half interest. Each of the three Morcroft children inherited an equal share of Catherine's interest in the property upon her death. Philip's interest remains with his estate.

Heather filed this action in September 2023 seeking an equitable partition of the property. The parties waived the appointment of commissioners, and the court thereafter ordered partition by sale. *See* Entry Order (May 13, 2024). The court appointed Russ Ingalls as special master, and the property was sold in "as is" condition on November 4, 2024, for the full asking price of

$399,000. After the payment of costs and expenses related to the sale, there remains $361,873.37 in proceeds of the sale available for distribution. The proceeds are currently being held in escrow pending the court's order.

Heather has proposed a distribution under which each party would get their proportionate share of the proceeds minus certain expenses, which are broken down into credits and debits for each party. Under Heather's proposed distribution, Philip's estate would receive $181,304.56, she would receive $62,085.38, Greg would receive $61,518.02, and Rodger would receive 56,965.41.

Greg has proposed a distribution under which he would be credited with significantly more expenses related to the property, and accordingly, would receive a correspondingly larger distribution. Under Greg's proposed distribution, Philip's estate would receive $154,663.95, Heather would receive $53,248.51, Greg would receive $105,847.38, and Rodger would receive $48,113.52.

Philip's estate supports Heather's proposed distribution. Rodger has not taken a position on how the court should distribute the sale proceeds.

### Conclusions of Law

The court begins with the presumption that each party is entitled to a distribution of sale proceeds in accordance with their ownership interest. The court then considers "the contributions of each party towards the actual expenses." *See Needham v. Roxanne O. Smith Tr. 9/15/19 Madelynn Cassin*, 2025 VT 18, ¶ 5. Finally, the court may consider "other equities cognizable in partition." *Whippie v. O'Connor*, 2010 VT 32, ¶ 15, 187 Vt. 523. On this last point, the court may consider "all relevant circumstances to ensure that complete justice is done," including "nonpecuniary factors." *See Bruner v. Gee*, 2023 VT 49, ¶ 20 (quotation omitted).

The parties do not dispute their relative interests in the property or the amount that is available for distribution. Nor, for the most part, do the parties dispute the expenses that the various parties incurred following Catherine's death in October 2021. The disagreement boils down whether Greg can claim expenses incurred while serving as Catherine's guardian before she died on October 25, 2021, and whether he is entitled to a $30,000 property management fee, representing his efforts to maintain the property to prevent deterioration and loss of value both before and after Catherine's death. Greg calculated the $30,000 fee by assigning what he viewed as a reasonable $5,000 annual property management fee for each of the 6 years preceding the property's sale.

There is no dispute that Greg may claim credit for the actual expenses he incurred maintaining the property from October 2021 until November 2024. Those expenses are included in Heather's proposed distribution, except for $294.15 Greg spent to rent a lawnmower and mow the lawn when a neighbor was unavailable to do the work. That expense will also be included as a credit toward Greg's distribution.

The court previously ruled that Greg is time-barred from claiming any expense incurred before September 8, 2017, and that he lacks standing to assert any claim on behalf of Catherine's

estate. Entry Regarding Motion (Mar. 6, 2024). Although the court invited Greg to join Catherine's estate as a party or amend his pleading to lay out an equitable claim against Philip's estate, no motion for joinder or to amend was filed. *See id.* Accordingly, the court concludes that Greg is precluded in this action from receiving an equitable setoff based on his efforts and contributions regarding the property made on Catherine's behalf while he was serving as her guardian prior to Catherine's death.

Greg, however, did testify persuasively and largely without contradiction that he was the only party that made any significant efforts to maintain the property to prevent deterioration and waste during the approximately three years between when Catherine died and when the property sold. Specifically, Greg (and his wife Dena) testified that Greg visited the property approximately every other month during this period, making a roughly 12-hour round trip from his home in Brooklyn each time. Greg and Dena testified that these efforts preserved the property's value, which was realized when the property sold at the initial asking price in November 2024.

In response, the other parties minimized Greg's contributions stating that he merely engaged service providers to do work at the property, that the parties had agreed that the property was to be sold "as is," and that Greg—as a one-sixth owner of the property—did not have authority to unilaterally incur expenses or take on a property management role. Greg replies that the other parties were uncooperative and uninterested in visiting the property, and that were it not for his efforts, the condition of the property would have significantly deteriorated, which would have made it more difficult to sell or at least more difficult to sell at the price for which it was listed.

Considering the totality of the circumstances, the court concludes that Greg's efforts after Catherine died and before the property sold were reasonable and helped maintain the property's value, to the benefit of all parties. Maintaining a thirty-acre property in the Northeast Kingdom is a significant undertaking and not easily done from afar. Even if Greg did not provide the majority of labor and did not pay all expenses, he visited the property regularly and assumed an oversight role when no one else would or could. This helped maintain the property's status quo condition through the date of sale. The court concludes that Greg's suggested $5,000 annual property management fee is reasonable under the circumstances given the time and travel involved and accordingly will permit Greg to claim an additional $15,000 expense for the three years between Catherine's death and the property's sale.

The court further concludes that the expenses claimed by Heather and Philip's estate are reasonable and supported by the evidence.

The court therefore accepts Heather's proposed distribution of proceeds, modified to permit Greg to claim an additional $15,294.15 expense on account of his rental of lawn mowing equipment and oversight of the property for approximately three years between Catherine's death and the sale of the property.

Philip's estate thus may claim expenses of $10,323.37, Heather may claim expenses of $5,134.99, and Greg may claim expenses of $19,411.41. Using the formula in Heather's proposed distribution, this results in a distribution to Philip's estate of $173,825.17, a distribution to Heather of $59,635.59, a distribution to Greg of $73,912,01, and a distribution to Rodger of $54,500.60. The court's calculations are set forth below[1]:

|  | **Philip's estate** | **Heather** | **Greg** | **Rodger** |
|---|---|---|---|---|
| **Initial share** | $180,936.68 | $60,312.23 | $60,312.23 | $60,312.23 |
| **Expenses** | $10,323.37 | $5,134.99 | $19,411.41 | N/A |
| **Credit** | $5,161.69 | $4,279.16 | $16,176.17 | N/A |
| **Debit** | -$12,273.20 | -$4,955.80 | -$2,576.39 | -$5,811.63 |
| **Net adjustment** | -$7,111.51 | -$676.64 | $13,599.78 | -$5,811.63 |
| **Total** | **$173,825.17** | **$59,635.59** | **$73,912.01** | **$54,500.60** |

### Order

The $361,873.37 held in escrow shall be distributed as follows: $173,825.17 to the Estate of Philip Samis; $59,635.59 to Heather Morcroft; $73,912,01 to Gregory Morcroft; and $54,500.60 to Rodger Morcroft.

Electronically signed on: 9/2/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

---

[1] Each party's "credit" represents its claimed expenses minus its ownership share of those expenses. Each party's "debit" represents its ownership share of the other parties' claimed expenses.