NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 99

No. 2019-368

| | |
|---|---|
| Kneebinding, Inc. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Civil Division |
| | |
| Richard Howell | June Term, 2020 |

Mary Miles Teachout, J.

Peter G. Anderson of Anderson & Associates, Stowe, for Plaintiff-Appellee.

Richard J. Howell, Pro Se, Stowe, Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1. **CARROLL, J.** This appeal is the third time the dispute between Richard Howell and KneeBinding, Inc., has reached this Court. In Kneebinding, Inc., v. Howell (KneeBinding II), 2018 VT 101, ¶ 150, 208 Vt. 578, 201 A.3d 326, we in large part affirmed an August 2016 trial court decision, but reversed its decision to terminate a March 30, 2009 permanent injunction and remanded the court's award of attorney's fees to KneeBinding with directions to consider additional evidence of legal fees. On remand in August 2019, the trial court (1) awarded additional attorney's fees to KneeBinding; (2) issued a sanction for a May 23, 2018 finding that Howell violated an August 10, 2017 injunction that was in place while KneeBinding II was pending; and (3) found Howell in contempt for violating the March 2009 permanent injunction that this Court restored in KneeBinding II. On appeal, Howell challenges the May 23, 2018, finding that he

violated the August 2017 injunction and the August 2019 finding that he violated the March 2009 permanent injunction. We affirm.

I. Factual and Procedural Background

¶ 2. In 2003, Richard Howell invented a binding that has a "special, patented heel release designed to mitigate knee injuries . . . that are common in downhill skiing." Id. ¶¶ 2-3. Around the same time, Howell founded a company with the name KneeBinding that was incorporated in Delaware and had its principle place of business in Stowe, Vermont. In November 2007, Howell formed a business relationship with John Springer-Miller, and the two signed transaction documents, which included an employment agreement, a stock-purchase agreement, an investor-rights agreement, and an amended certificate of incorporation. These transaction documents created the following corporate structure. Springer-Miller was the majority shareholder and Howell was a minority shareholder. Howell would serve as president, chief executive officer, secretary, and treasurer. His employment, however, was at-will. Id. Springer-Miller would serve as the company's chief financial officer and have control over the company funds.

¶ 3. Howell and Springer-Miller's working relationship "began to deteriorate almost immediately," and the KneeBinding board voted to terminate Howell as president in September 2008. Id. ¶¶ 10, 13. In December, Howell signed a severance agreement and eventually resigned from the board. The severance agreement contained a non-disparagement clause, a confidentiality clause, and a release. The release provided the following:

> In consideration of the agreements and promises described in Paragraph 2(b), which you acknowledge you would not otherwise be entitled to receive, you hereby fully, forever, irrevocably and unconditionally release, remise, and discharge the Company, its officers, directors, attorneys, affiliates, investors, agents and employees (each in their individual and corporate capacities) . . . from any and all claims . . . of every kind and nature that you ever had or now have against the Released Parties, including, but

2

not limited to, any and all claims arising out of or relating to your employment with and/or separation from the Company . . . .

The end of the severance agreement explained that the severance agreement "constitutes the entire understanding and agreement between the parties hereto with respect to your severance benefits and the settlement of claims against the Company and cancels all previous oral and written negotiations, agreements, commitments and writings in connection therewith."

¶ 4. In March 2009, KneeBinding filed a motion for an ex parte temporary restraining order (TRO) alleging that Howell had violated the confidentiality and non-disparagement portions of the severance agreement. The trial court granted the motion and issued a TRO ordering Howell "not to publish oral or written statements relating to KneeBinding to any 'current or potential customer, client, investor, and vendor.' " KneeBinding II, 2018 VT 101, ¶ 14. KneeBinding subsequently filed a motion for contempt because Howell responded to the TRO by picketing in front of the courthouse with a sign alleging that " 'KneeBinding was 100% defective.' " Id.

¶ 5. On March 30, 2009, the parties reached two agreements that the trial court signed into orders: a stipulation for a permanent injunction and a stipulation regarding contempt. The permanent injunction provided, among other things, the following:

> (1) [Howell] shall not publish or cause to be published any communication, oral or written, that relates to KneeBinding, its products, or John or Tina Springer-Miller or any of its other principals to any current or potential customer, client, investor or vendor.

> (2) [Howell] shall not publish or caused to be published any communication, oral or written, that has a reasonable likelihood to create confusion as to whether he speaks or acts on behalf of KneeBinding, its products, or John or Tina Springer-Miller or any of its other principals.

Id. ¶ 16 (alteration in original). The contempt stipulation provided that Howell had violated the TRO, set an appropriate fine of $7000, and relieved Howell's obligation to pay the fine if he did not violate the permanent injunction prior to September 15, 2009.

¶ 6.     That same month, KneeBinding filed suit against Howell, alleging: (1) trademark infringement, (2) violations of the non-disparagement and noncompete provisions of the severance agreement, (3) tortious interference with contract, (4) defamation, and (5) misappropriation of trade secrets.    Howell counterclaimed, alleging: (1) defamation, (2) breach of contract, (3) invasion of privacy, (4) misappropriation, (5) unfair competition, (6) patent violations, (7) tortious interference with busines relations, and (8) intentional infliction of emotional distress. While the case was proceeding at the trial court, KneeBinding moved for sanctions in 2010, and again in 2012, alleging that Howell had violated the permanent injunction.

¶ 7.     In 2012, the trial court granted partial summary judgment to KneeBinding, ruling that Howell's claims were barred by the release in the severance agreement, with the exception of his claims for misappropriation of his name and skills, defamation, and intentional infliction of emotional distress.  This ruling was affirmed on interlocutory appeal.  Following KneeBinding I, the trial court conducted a twenty-day trial and issued a lengthy decision in August 2016 ruling against Howell on his remaining claims.  As to KneeBinding's claims, the court ruled that Howell had defamed the company and violated the permanent injunction.  The court directed the parties to submit further briefing on sanctions for violating the injunction and the appropriate damages for defamation.

¶ 8.     From January to April 2017, the trial court issued a series of interlocutory decisions on these remaining issues.  As relevant to this appeal, these decisions included: (1) declining to impose the $7000 stipulated fine for violating the permanent injunction; (2) vacating the permanent injunction, reasoning that keeping the injunction in effect post-trial posed First Amendment concerns; and (3) awarding KneeBinding $22,433 in attorney's fees incurred litigating the contempt claims.  KneeBinding appealed.

4

¶ 9.    While the appeal in <u>KneeBinding II</u> was pending, KneeBinding moved, pursuant to Vermont Rule of Civil Procedure 62(d)(2), to restore the permanent injunction pending appeal. On August 10, 2017, the trial court instated a modified injunction, which provided:

> [W]hile an appeal by a party to this litigation is pending in the Vermont Supreme Court,
>
> 1. Richard J. Howell shall not publish or cause to be published any false, disparaging, or derogatory communication, oral or written, regarding KneeBinding, Inc., its products, John or Tina Springer-Miller, or any other KneeBinding principal, to any media outlet, industry group, current or potential customer, client, investor, or vendor.

¶ 10.    Between February and March 2018, while <u>KneeBinding II</u> was still pending, Howell sent three emails to Progressive Plastics—one of Kneebinding's vendors—alleging that Progressive was infringing on his patents and directing Progressive, under the threat of litigation, to cease production and pay him damages.  Based on these emails, KneeBinding filed another motion for contempt in the trial court arguing that Howell violated the August 2017 injunction. On May 23, 2018, Judge Bryan[1] found Howell in contempt for sending three emails to Progressive Plastics "making false statements that he owned the KneeBinding patents and that Progressive was infringing them"; however, Judge Bryan declined to impose a fine while there was an appeal pending in this Court.

¶ 11.    In October 2018, this Court issued <u>KneeBinding II</u>, which in large part affirmed the trial court's August 2016 and subsequent interlocutory decisions. 2018 VT 101, ¶ 150.  However, we reversed the trial court's decision to vacate the permanent injunction, explaining that the permanent injunction did not pose First Amendment concerns "[b]ecause the record evidence demonstrate[d] that the stipulation providing for the injunction was voluntarily agreed to after day-long negotiations—with counsel representing both parties—and it clearly identifie[d] the free

---

[1]    The opinion references judges by name, rather than the trial court, given the multiple judges that issued orders relevant to this appeal.

speech rights that Howell" relinquished.  KneeBinding II, 2018 VT 101, ¶ 63.  In addition, we reversed and remanded the court's award of attorney's fees to KneeBinding for litigating the contempt claims because the court ignored evidence regarding the "significant legal fees" incurred in filing the second motion for contempt in 2010.  Id. ¶ 133.

¶ 12.    In January 2019, KneeBinding filed a fifth contempt motion based on additional emails and letters Howell sent to Progressive Plastics and KneeBinding principals in November 2018 requesting damages for infringing on Howell's patents.

¶ 13.    In April and August 2019, Judge Teachout conducted two days of hearings to address three remaining issues that are at the center of the present appeal: (1) the attorney's fees issue remanded in KneeBinding II; (2) the proper sanction for Judge Bryan's May 23, 2018, contempt finding; and (3) the new motion for contempt filed in January 2019.  In regard to the first issue, the trial court awarded an additional $6835 in attorney's fees.  Second, as a sanction for the May 23 contempt finding, the court issued a declaration providing that "[a]ny representation by Mr. Howell that he owns the specific patents and intellectual property determined by this court and the Vermont Supreme Court to be solely owned by KneeBinding, Inc., and not by Mr. Howell, is incorrect."  Finally, the court found that Howell violated the March 2009 permanent injunction based on a November 15, 2018 letter he sent to Progressive Plastics where he falsely asserted that he owned the patents to the ski bindings.  As a sanction for the contempt finding, the court awarded $10,000 in attorney's fees and a coercive fine of $7000 for any future violation, which would increase by $7000 upon each successive violation.

¶ 14.    On appeal, Howell argues that both Judge Bryan and Judge Teachout erred.  He challenges Judge Bryan's May 23, 2018 contempt finding on the ground that there was no injunction in effect when he sent the emails to Progressive Plastics.  Second, Howell argues that his due process rights were violated because he did not receive notice of the hearing where Judge Bryan considered KneeBinding's request to restore the permanent injunction pending appeal.

6

Third, Howell alleges that the injunction is invalid because Judge Bryan engaged in some kind of transcript fraud. Fourth, Howell argues that the August 2017 injunction unconstitutionally interferes with his right to earn a living and violates public policy. Finally, he argues that he did not violate the August 2017 injunction because at the time he sent the emails to Progressive Plastics, he owned, or had a reasonable expectation that he owned, the KneeBinding patents.

¶ 15. With regard to Judge Teachout's decision, Howell argues that the court's award of sanctions did not specify whether he violated the August 2017 or March 2009 permanent injunction. Howell argues that the failure creates a material ambiguity that voids the award of sanctions. Second, he renews his argument that the permanent injunction unconstitutionally interferes with his right to earn a living. Related to this argument, Howell also argues that the court erred in preventing him from presenting testimony that demonstrated how the permanent injunction interferes with his right to earn a living. Finally, Howell argues that the court erred in finding that he violated the permanent injunction because he had a reasonable expectation that he owned the patents when he sent the November 15, 2018 letter.

¶ 16. We first address the specific challenges Howell raises with regard to Judge Bryan's and Judge Teachout's decisions. We then address Howell's broader argument against the contempt proceedings as a whole—that he did not violate the August 2017 or March 2009 injunction because he owns, or has a reasonable expectation that he owns, the Kneebinding patents.

## II. Judge Bryan's Contempt Finding

¶ 17. On May 23, 2018, Judge Bryan found that Howell violated the August 2017 injunction by sending three emails to Progressive Plastics between February and March 2018 alleging that Progressive Plastics was infringing on his patents and directing Progressive, under the threat of litigation, to cease production and pay Howell damages. Despite finding Howell in contempt, Judge Bryan declined to impose a sanction while the trial court's August 2016 and subsequent interlocutory decisions were pending on appeal in KneeBinding II. On remand from

our decision in KneeBinding II, Judge Teachout imposed a sanction for Judge Bryan's contempt finding—a declaration providing that "[a]ny representation by Mr. Howell that he owns the specific patents and intellectual property determined by this Court and the Vermont Supreme Court to be solely owned by KneeBinding, Inc., and not by Mr. Howell, is incorrect."

A. Status of Injunction Between February and March 2018

¶ 18. Howell argues that there was no injunction in effect when he sent the three emails to Progressive Plastics. We begin with some additional factual and procedural background. In March 2009, the parties stipulated to a permanent injunction. In March 2017, however, the trial court vacated the permanent injunction, explaining that keeping the injunction in effect post-trial posed First Amendment concerns. On July 3, 2017, KneeBinding moved, pursuant to Vermont Rule of Civil Procedure 62(d)(2), to restore the permanent injunction pending appeal in KneeBinding II. The court instituted a modified injunction on August 10, 2017. In October 2017, KneeBinding filed a motion with this Court to restore the permanent injunction pending appeal, which this Court denied.

¶ 19. Howell argues that there was no injunction in effect as of October 2017 because this Court's denial of KneeBinding's motion to reinstate the permanent injunction also vacated the trial court's August 2017 modified injunction. We disagree. Vermont Rule of Civil Procedure 62(d)(2) provides the following:

> When an appeal is taken from a final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

Rule 62 does not, however, "limit any power of the Supreme Court during the pendency of an appeal to suspend, modify, restore, or grant an injunction." V.R.C.P. 62(f).

¶ 20. Rule 62(d)(2) certainly gives this Court authority to suspend an injunction granted by a trial court during the pendency of an appeal. The record indicates, however, that the Court

8

did not exercise that authority in this case. As the trial court explained, the effect of this Court's denial of KneeBinding's motion to restore the permanent injunction pending appeal was to keep the August 2017 modified injunction in place. Accordingly, Howell is incorrect that there was no injunction in place when he sent the emails to Progressive Plastics.

## B. Notice

¶ 21. Howell also argues that his due process rights were violated because Judge Bryan and other employees at the Lamoille Civil Division intentionally failed to give him notice of the hearing where Judge Bryan considered KneeBinding's motion to restore the permanent injunction pending appeal. On August 3, 2017, Judge Bryan held a hearing on KneeBinding's motion to restore the permanent injunction pending appeal. Howell was not present. Following the court's August 10 decision instating a modified injunction, Howell filed a request for an emergency hearing to void the amended injunction, arguing that he did not attend the August hearing because he did not receive any notice. The court granted an additional hearing on August 29 where Howell was present and "given the better part of an hour to make his presentation." Howell's "principal point was that because his company and his patent had been 'stolen' from him by the Springer-Millers, the company and his invention were essentially his and there was no need for the injunction."

¶ 22. Following the emergency hearing, the court issued an order declining to amend or void the August 2017 injunction. The court explained that there was no explanation for why Howell did not receive the notices of the August 3 hearing that the court sent:

> The records show that notices were mailed, the Court Operations Manager specifically remembers sending the notices, and she checked off the intended recipients on the list as she did so. Moreover, because Mr. Howell's address in his in forma pauperis application to the Vermont Supreme Court was different from his mailing address in the court's records, the Court Operations Manager telephoned Mr. Howell to confirm the mailing address, and he told her to send mail to his post office box, which she did.

9

Nevertheless, the court explained that it granted Howell a full hearing, he was given significant time to make his argument, and he did not convince the court to vacate the modified injunction.

¶ 23.    As an initial matter, the record is devoid of any evidence that Judge Bryan or any judiciary employee intentionally withheld notice of the August 3, 2017 hearing.  As recounted above, Judge Bryan specifically found that the court operations manager contacted Howell; Howell directed the manager to send the notices to his post office box; and the notices were mailed.  Howell points to no evidence in the record indicating that these findings are clearly erroneous or supporting his allegations that any misconduct occurred.

¶ 24.    In any event, even though Howell was not present at the August 3 hearing, his due process rights were not violated.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  In re C.L.S., 2020 VT 1, ¶ 25, ___ Vt. ___, 225 A.3d 644 (quotation and alteration omitted).  Although Howell was not present at the August 3 hearing, the trial court granted an additional hearing where Howell was present and given significant time to present his arguments.  Given this additional hearing, Howell was provided a meaningful opportunity to be heard.

### C.  Transcript Fraud

¶ 25.    Howell alleges that Judge Bryan committed some kind of transcript fraud and argues that, as a result, the transcripts of the proceedings are "materially compromised and defrauded."  Some additional procedural history is necessary to evaluate this argument.  On May 23, 2018, Judge Bryan found that Howell violated the August 2017 injunction but delayed the question of sanctions while the appeal in KneeBinding II was pending.  Howell immediately appealed this contempt finding and subsequently filed a motion with this Court challenging the accuracy of the transcripts.

¶ 26.    In an order, we explained that we "construed his filing as challenging whether the record truly disclose[d] what occurred in the superior court," and pursuant to Vermont Rule of

Appellate Procedure 10(f), we remanded to the trial court so the record could be corrected. See V.R.A.P. 10(f) ("If any difference arises about whether the record truly discloses what occurred in the superior court, the difference must be submitted to and settled by that court and the record conformed accordingly."). The trial court held one hearing on remand. On November 9, 2018—before the trial court completed the proceedings to correct the transcripts—we dismissed Howell's appeal of Judge Bryan's contempt finding, concluding that "[u]pon further jurisdictional screening," the May 23 contempt finding was not a final order because Judge Bryan did not address the question of sanctions. Because we dismissed the appeal, we also terminated the proceedings to correct the transcript.

¶ 27.   On remand from KneeBinding II, Howell renewed his concerns about transcript fraud at the August 2019 hearing before Judge Teachout. Judge Teachout determined, however, that the transcript issue was no longer relevant, stating:

> Well, this is from the—from a prior transcript issue. And in—on November 9th of 2018 the Supreme Court—in the same entry order of which the Supreme Court said the contempt and sanctions hearing wasn't over yet, and needed to come back to the trial court if the plaintiff wished it, which is why we're here, in that same order dismissing the appeal that was before it at that time, this court said we terminated the proceedings to correct the transcript pursuant to V.R.A.P. 10(f). So that was the transcript issue that related to that appeal. So that is over.

Howell responded that if the court awarded sanctions, he planned to "readdress the transcript fraud issues [on] appeal."

¶ 28.   On appeal, Howell renews his allegations that Judge Bryan engaged in transcript fraud. Rule 10(f) provides that "[i]f any difference arises about whether the record truly discloses what occurred in the superior court, the difference must be submitted to and settled by that court and the record conformed accordingly." Vermont Rule 10(f) is almost identical to Federal Rule of Appellate Procedure 10(e). Interpreting Rule 10(e), several federal courts have held that in the absence of a motion to correct or modify the record, the transcripts are accepted as accurate. See,

11

e.g., United States v. Sussman, 709 F.3d 155, 180 (3d Cir. 2013) ("[T]he government's contention that the transcript is not accurate does not take into account that in the absence of a motion to correct or modify the record under Federal Rule of Appellate Procedure 10(e), we accept as accurate the transcript of the district court proceedings." (quotation and alteration omitted)); Gov't of the Virgin Islands v. Paniagua, 922 F.2d 178, 181 n.1 (3d Cir. 1990) (accepting "as accurate the transcript of the district court proceedings" because defendant did not make "a motion to correct or modify the record").

¶ 29.   Miles v. Klein, 250 F. App'x 739, 741 (7th Cir. 2007), is particularly instructive. In that case, the plaintiff alleged that "the transcripts themselves [were] 'tainted' and '[did] not correctly reflect the statements actually made during the status hearings held in the District Court.' " Id.  Because the plaintiff did not file a motion to correct the transcript below, the Seventh Circuit concluded that it was "simply unable to consider in the first instance an argument that a certified transcript from the district court [was] 'tainted.' " Id.

¶ 30.   Similarly, here, Howell alleges that Judge Bryan engaged in transcript fraud. Although Howell previously filed a motion, which we construed as a motion under Vermont Rule of Appellate Procedure 10(f), the underlying appeal was dismissed, and the proceedings to correct the transcript were terminated.  Howell did not file a motion to correct the record before Judge Teachout, and applying the rule announced in Miles, "we are simply unable to consider in the first instance an argument that a certified transcript . . . is 'tainted.' " Id.

### D.  Validity of August 2017 Injunction

¶ 31.   Howell challenges Judge Bryan's contempt finding on the ground that the August 2017 injunction unconstitutionally interfered with his right to work as guaranteed by the Fourteenth Amendment to the United States Constitution.  In addition, he argues that the injunction violated public policy because it prevented him from warning the public about the allegedly defective nature of the ski bindings KneeBinding was producing.  Furthermore, Howell argues that

12

the collateral bar rule does not prevent him from collaterally challenging the August 2017 injunction because this is the first opportunity he had to challenge the injunction. Kneebinding responds that Howell's challenge to the validity of the August 2017 injunction is barred by claim preclusion because in KneeBinding II, this Court determined that the March 2009 permanent injunction was valid.

¶ 32. We conclude that the collateral bar rule does not prevent Howell from collaterally challenging the validity of the August 2017 injunction. Although KneeBinding argues that Howell's challenge is claim precluded, the law-of-the-case is the relevant doctrine. We conclude that Howell's challenge to the August 2017 injunction is not controlled by the law-of-the-case doctrine because this Court has never decided the validity of that injunction. Nevertheless, for the same reasons articulated in KneeBinding II, we conclude that the August 2017 injunction was neither unconstitutional nor violated public policy.

### 1. Collateral Bar Rule

¶ 33. "Under the collateral bar rule, a person is generally barred from collaterally challenging the validity of a court order in defense to a contempt proceeding for violating the order." In re Carpenter, 2018 VT 91, ¶ 13, 208 Vt. 291, 197 A.3d 865; accord In re Duckman, 2006 VT 23, ¶ 10, 179 Vt. 467, 898 A.2d 734 ("The collateral bar rule provides that individuals cannot challenge the validity of a court order by violating the order."). "The rationale for this rule is to protect the efficient administration of justice and to encourage litigants to follow court orders." Duckman, 2006 VT 23, ¶ 10.

¶ 34. "The rule is not without exception." Id. ¶ 11. "[T]he collateral bar rule does not apply where there was not an adequate and effective remedy to review the challenged ruling." Carpenter, 2018 VT 91, ¶ 15 (quotation omitted). Furthermore, "in some jurisdictions, orders that are transparently invalid or frivolous are excepted from the collateral bar rule." Duckman, 2006 VT 23, ¶ 11 n.4.

13

¶ 35. Here, Howell appears to argue that the adequate-and-effective-remedy exception applies, and we agree. To avoid the collateral bar rule, a "party must challenge the order by direct appeal." Allen v. Iowa Dist. Court for Polk Cty., 582 N.W.2d 506, 508 (Iowa 1998) (per curiam), cited with approval in Duckman, 2006 VT 23, ¶ 10. Of course, this rule presumes that appellate review of the order is available before a contempt proceeding. If appellate review is not available prior to a contempt proceeding, there is not a remedy—never mind an adequate and effective one—to review the challenged ruling. Cf. State v. Austin, 165 Vt. 389, 401, 685 A.2d 1076, 1084 (1996) (holding that "a probationer is barred from raising a collateral challenge to a probation condition that he was charged with violating, where the challenge could have been raised on direct appeal from the sentencing order").

¶ 36. For example, in Allen, a defendant refused to comply with a court order requiring him to testify. 582 N.W.2d at 507. Although the defendant sought immediate appellate review, discretionary review was denied, and he "was left with no recourse but to imperil himself by testifying . . . or to violate the order compelling him to testify." Id. at 509. The defendant refused to testify and was held in contempt. On appeal of the contempt finding, the Iowa Supreme Court held that the adequate-and-effective-remedy exception to the collateral bar rule applied because the defendant had not been provided with appellate review of the court order compelling him to testify prior to being held in contempt. Id.

¶ 37. Similarly, here, Howell has not yet been provided with appellate review of the August 2017 injunction. This injunction was instituted, pursuant to Vermont Rule of Civil Procedure 62, while the trial court's August 2016 and subsequent interlocutory decisions were pending on appeal in KneeBinding II. Although Judge Bryan found that Howell violated the August 2017 injunction on May 23, 2018, Judge Bryan's contempt finding did not become a final order subject to appellate review until Judge Teachout applied sanctions in August 2019, which was after this Court issued its decision in KneeBinding II. Similar to the defendant in Allen,

14

Howell was not provided with appellate review of the August 2017 injunction prior to being held in contempt. We accordingly hold that the collateral bar rule does not apply because there has not been an adequate and effective remedy to review the August 2017 injunction.

## 2. Claim Preclusion

¶ 38. KneeBinding argues that Howell is precluded from challenging the validity of the August 2017 injunction because this Court already decided in KneeBinding II that the March 2009 injunction was neither unconstitutional nor violated public policy. We disagree. Claim preclusion is inapplicable in this case because there is not a final judgment in previous litigation.

¶ 39. "Under the doctrine of claim preclusion, a final judgment in previous litigation bars subsequent litigation . . . ." Faulkner v. Caledonia Cty. Fair Ass'n, 2004 VT 123, ¶ 8, 178 Vt. 51, 869 A.2d 103. More specifically, "claim preclusion will preclude a claim from being litigated if (1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." Iannarone v. Limoggio, 2011 VT 91, ¶ 15, 190 Vt. 272, 30 A.3d 655 (quotation omitted).

¶ 40. In this case, claim preclusion does not apply because there is not a "final judgment in former litigation." Berlin Convalescent Ctr., Inc., v. Stoneman, 159 Vt. 53, 56, 615 A.2d 141, 143 (1992). The current issues on appeal are part of the same case that has been litigated over the last two decades. There is accordingly no prior judgment that could have preclusive effect. Cf. In re A.M., 2015 VT 109, ¶ 58, 200 Vt. 189, 130 A.3d 211 (Dooley, J., concurring) (distinguishing between "another event in one case" and "issue preclusion," which "involves the preclusive effect of a judgment in one case on the resolution of an issue in another case"). Because KneeBinding is arguing about the effect of previous decisions in the same—rather than a different—case, the law-of-the-case is the applicable doctrine.

15

### 3. Law-of-the-case Doctrine

¶ 41. "Under the law-of-the-case doctrine, questions necessarily involved and already decided . . . will not be revisited . . . ." Whippie v. O'Connor, 2011 VT 97, ¶ 7, 190 Vt. 600, 30 A.3d 1292 (mem.). The doctrine is a "rule of general application that a decision in a case of last resort is the law of that case on the points presented throughout all the subsequent proceedings . . . ." Coty v. Ramsey Assocs., Inc., 154 Vt. 168, 171, 573 A.2d 694, 696 (1990) (quotation and alteration omitted). Simply put, "when this Court remands a case, our decision is the law of that case on the points presented throughout all the subsequent proceedings." In re FitzGerald, 2020 VT 14, ¶ 35, ___ Vt. ___, 229 A.3d 446 (quotation omitted).

¶ 42. KneeBinding argues that, under the law-of-the-case doctrine, the August 2017 injunction was neither unconstitutional nor violated public policy because in KneeBinding II, this Court held that the March 2009 permanent injunction was neither unconstitutional nor violated public policy. KneeBinding is certainly correct that this Court upheld the validity of the March 2009 permanent injunction in KneeBinding II. See 2018 VT 101, ¶ 64. Although substantially similar, the August 2017 and March 2009 injunctions are different. The trial court vacated the 2009 permanent injunction in 2017 because it was concerned about Howell's First Amendment rights. The August 2017 injunction that the court instated was narrower; it did not include paragraph two, and paragraph one was modified to avoid the trial court's concerns that as previously written it "likely would preclude . . . Howell's employment as a sales person in a ski shop selling ski bindings." Howell's challenge to the August 2017 injunction is not controlled by the law-of-the-case doctrine because we have never directly decided the validity of that injunction.

### 4. Merits

¶ 43. Howell argues that the August 2017 injunction was invalid because it unconstitutionally interfered with his right to earn a living and violated public policy. Although Howell's challenge is not controlled by the law-of-the-case doctrine, we agree with KneeBinding

that we addressed similar arguments in the context of the March 2009 permanent injunction. We conclude that the August 2017 injunction does not violate Howell's constitutional rights and does not violate public policy for the same reasons we articulated in KneeBinding II.

¶ 44. First, Howell argues that the August 2017 injunction violated public policy because it prevented him from warning the public about the allegedly defective nature of the ski bindings that KneeBinding was producing. In KneeBinding II, Howell argued that he could not be held in contempt for violating the March 2009 permanent injunction because "he was trying to warn the public about a dangerous product." 2018 VT 101, ¶ 64 n.12. We explained that this argument was "unavailing" because "the injunction does not limit Howell from going to a governmental investigative body—as he has previously—with a complaint if he has concerns." Id. The same reasoning applies with respect to the August 2017 injunction—it did not prevent Howell from expressing his concerns about the ski bindings to the appropriate governmental regulators.

¶ 45. Howell also argues that the August 2017 injunction unconstitutionally interfered with his right to earn a living. As an initial matter, there is no evidence in the record that the August 2017 injunction interfered with Howell's right to earn a living. It is unclear why his right to earn a living required him to publish "false, disparaging, or derogatory communication[s]" regarding KneeBinding or its principals.

¶ 46. Nevertheless, for similar reasons as we articulated in KneeBinding II, Howell has contractually waived any right to earn a living that required him to violate the terms of the August 2017 injunction. In KneeBinding II, we held that the trial court abused its discretion in terminating the 2009 permanent injunction because the "court's conclusion that the injunction [was] an unconstitutional prior restraint on speech" was based on an erroneous understanding of the law. Id. ¶¶ 58, 61. We explained that "[p]rivate parties are free to contractually waive their First Amendment rights," and that, provided the waiver is "knowing, voluntary, clear, and unequivocal, state action through judicial recognition and enforcement of the agreement is constitutional." Id.

17

¶¶ 61-62. Based on this standard, we concluded that judicial enforcement of the March 2009 permanent injunction did not "raise constitutional flags" because "the record evidence demonstrate[d] that the stipulation providing for the injunction was voluntarily agreed to after day-long negotiations—with counsel representing both parties—and it clearly identifie[d] the free speech rights that Howell [was] relinquishing." Id. ¶ 63.

¶ 47.    Because the August 2017 injunction is a narrower version of the March 2009 permanent injunction, the same waiver reasoning applies here. "[C]onstitutional rights are subject to contractual waiver," Bowens v. N.C. Dep't of Human Res., 710 F.2d 1015, 1018 (4th Cir. 1983), and enforcement is lawful provided the waiver is knowing and voluntary, Lake James Cmty. Volunteer Fire Dep't v. Burke Cty., N.C., 149 F.3d 277, 280 (4th Cir. 1998).  The record indicates that Howell knowingly and voluntarily agreed to the permanent injunction, which prevented him from publishing any "communication, oral or written, that relates to KneeBinding" to any vendor. By doing so, Howell waived any constitutional right to earn a living that required him to violate the terms of the injunction.

¶ 48.    The August 2017 injunction similarly prohibited Howell from publishing "false, disparaging, or derogatory communications . . . regarding KneeBinding, Inc." to any vendors. Thus, the conduct that Judge Bryan found Howell in contempt for—sending three emails to a KneeBinding vendor, Progressive Plastics, making "false statements that he owned the KneeBinding patents and that Progressive was infringing them"—falls well within the scope of the permanent injunction, which is conduct that Howell knowingly and voluntarily agreed to refrain from doing.

### III.  Judge Teachout's Decision

¶ 49.    Howell argues that Judge Teachout erred for several reasons.  We address each argument in turn.

18

## A. Ambiguity

¶ 50. Howell argues that Judge Teachout's decision did not make clear whether he violated the August 2017 or March 2009 injunction. Given the varying injunctions imposed over the course of the litigation, Howell argues that Judge Teachout's failure to identify the relevant injunctions creates ambiguity that requires her award of sanctions and attorney's fees to be vacated.

¶ 51. As a factual matter, Judge Teachout's August 2019 decision leaves no ambiguity regarding the injunctions that were in effect, which injunctions Howell violated, nor the sanctions that she imposed for each violation. Judge Teachout explained that on May 23, 2018, Judge Bryan found Howell in violation of the August 2017 injunction. Because that injunction was no longer in force, Judge Teachout declined to impose a fine based on that contempt finding; instead, she issued a declaration. Judge Teachout then addressed KneeBinding's January 2019 motion, which argued that Howell violated the permanent injunction that this Court had restored in KneeBinding II. In a footnote, Judge Teachout clarified that although KneeBinding's motion alleged that Howell violated the August 2017 injunction, KneeBinding withdrew that portion of the motion because the alleged actions occurred when the August 2017 injunction was no longer in effect. Judge Teachout found that Howell violated the permanent injunction by sending a letter to Progressive Plastics on November 15, 2018, claiming that he owned the Kneebinding patents, and she issued a sanction. The August 2019 decision leaves no ambiguity regarding which injunctions were in effect nor the injunctions Howell violated.

## B. Constitutionality of Permanent Injunction

¶ 52. Second, Howell argues that the permanent injunction is unconstitutional because it interferes with his right to earn a living. We do not consider this argument because it falls within the purview of the collateral bar rule. "Under the collateral bar rule, a person is generally barred from collaterally challenging the validity of a court order in defense to a contempt proceeding for violating the order." Carpenter, 2018 VT 91, ¶ 13. "The rationale for this rule is to protect the

19

efficient administration of justice and to encourage litigants to follow court orders." <u>Duckman</u>, 2006 VT 23, ¶ 10.

¶ 53. In this case, we already considered the constitutionality of the March 2009 permanent injunction in <u>KneeBinding II</u>. We concluded that the trial court abused its discretion in terminating the permanent injunction because the record indicated that Howell had knowingly and voluntarily relinquished his First Amendment rights. <u>KneeBinding II</u>, 2018 VT 101, ¶ 64. Having already had an opportunity to challenge the validity of the permanent injunction on appeal—where Howell could have raised his Fourteenth Amendment claim—the collateral bar rule prevents Howell from challenging the validity of the permanent injunction in defense to Judge Teachout's contempt finding.

### C. Testimony

¶ 54. Howell argues that Judge Teachout erred in excluding testimony during the August 2019 hearing that would have demonstrated how the permanent injunction interfered with his right to earn a living. In his brief, Howell dedicates three pages to outlining the evidence he would have introduced, which documents his background and expertise in the ski industry.

¶ 55. In April and August 2019, Judge Teachout conducted two days of hearings to address three specific issues: (1) the attorney's fees issue remanded in <u>KneeBinding II</u>; (2) the proper sanction for Judge Bryan's May 23, 2018 contempt finding; and (3) the motion for contempt filed in January 2019. At the second hearing day in August, Howell called Christopher Brown, an engineering professor, as a witness. The following exchange occurred:

> Howell: Okay. So my first question relating to this matter pertains to foundation. And I'd like you to traverse the interactions that you have had firsthand with me from a foundational perspective, on my work relating to ski bindings and ski bindings biomechanics?
>
> [Opposing Counsel]: Objection, Your Honor, relevance.
>
> The Court: It does seem to be a much, much broader subject matter than the specific purpose of this hearing.

20

Howell: The purpose is foundation, Your Honor. I believe that Amendment Fourteen of the U.S. Constitution allows me to pursue my chosen line of work. I want to establish that I've worked in ski bindings my entire adult life, forty-seven years. And I want to go after that Amendment Fourteen. So I want to provide the evidence that will show that's a valid legal argument to pursue Amendment Fourteen based on my extensive background and ski bindings work related.

. . .

The Court: The objection is sustained. That is not sufficiently focused to the issues for which this hearing is being held. It's far broader.

Following Brown's testimony, Howell told the court he wanted to call Roland Bohme as an additional witness and that Bohme's testimony was relevant because it would "buttress" his Fourteenth Amendment argument. Based on Howell's offer, the court did not permit the testimony.

¶ 56. "In matters of trial conduct and evidentiary rulings the trial court has wide discretion." State v. Richards, 144 Vt. 16, 19, 470 A.2d 1187, 1189 (1983). We accordingly "apply a deferential standard of review to the trial court's evidentiary rulings and will reverse its decision only when there has been an abuse of discretion that resulted in prejudice." State v. Russell, 2011 VT 36, ¶ 6, 189 Vt. 632, 22 A.3d 455 (mem.) (quotation omitted). Judge Teachout did not err in ruling that Brown's and Bohme's testimony was not relevant, especially considering our holding that Howell was barred from challenging the March 2009 permanent injunction.

## IV. Patent Ownership

¶ 57. Howell's last argument is that he did not violate the August 2017 or March 2009 injunction because he either owns, or has a reasonable expectation that he owns, the KneeBinding patents. We conclude that Howell's arguments are either controlled by the law-of-the-case doctrine or inadequately briefed.

21

¶ 58.    The ownership of the KneeBinding patents has been thoroughly litigated over the past two decades.  Howell invented and patented the ski binding in 2003.  In December 2006, Howell assigned the  patents to the KneeBinding company, Kneebinding, Inc.  About two years later, when Howell was removed from his position as president of KneeBinding, he signed a severance agreement, in which he agreed to release "any and all claims . . . of every kind and nature that [he] ever had or now ha[s] against the Released Parties, including, but not limited to, any and all claims arising out of or relating to [his] employment with and/or separation from the Company." In a section entitled "Entire Agreement," the severance agreement further provided:

> This letter agreement . . . contains and constitutes the entire understanding and agreement between the parties hereto with respect to [Howell's] severance benefits and the settlement of claims against [KneeBinding] and cancels all previous oral and written negotiations, agreements, commitments and writings in connection therewith.

¶ 59.    In March 2009, KneeBinding filed suit against Howell, and he counterclaimed alleging, among other things, that KneeBinding violated his patents.  The trial court ruled that Howell's patent claim was barred by the release, which was affirmed on interlocutory appeal.  On appeal in KneeBinding II, Howell argued that he owned the KneeBinding patents because "the 'entire agreement' provision in the severance agreement cancel[ed] all prior contracts, and therefore cancel[ed] all prior transaction agreements between himself and the Springer-Millers." 2018 VT 101, ¶ 136 n.23.  We described this theory as "patently false" because a plain reading of the entire-agreement provision demonstrated "not that all past contracts between the parties were cancelled, but rather that past agreements relating to severance benefits and the settlements of claims were cancelled." Id.

¶ 60.    In the present appeal, Howell yet again argues that he owns the patents because the entire-agreement section of his severance agreement cancelled the patent assignments.  We do not

22

address this argument because "[u]nder the law-of-the-case doctrine, questions necessarily involved and already decided . . . will not be revisited." O'Connor, 2011 VT 97, ¶ 7.

Howell also argues that the patents will revert back to him because (1) KneeBinding is not a bona fide corporation, as it does not provide shareholders with tax information and meeting minutes; and (2) KneeBinding will be bankrupted by ongoing federal litigation, and bankruptcy automatically cancels assignment. We do not address these arguments because they are inadequately briefed. Vermont Rule of Appellate Procedure 28(a)(4) provides that an appellant's brief must contain an argument with "citations to the authorities, statutes, and parts of the record on which the appellant relies." "Mere naked statements unsupported by argument or citation of authorities constitute inadequate briefing and merit no consideration." Doyle v. Polle, 121 Vt. 335, 339, 157 A.2d 226, 230 (1960); see also Allen v. Dep't of Emp't Sec., 141 Vt. 132, 135, 444 A.2d 892, 893-94 (1982) (holding that appellant's brief was inadequate under Rule 28 because it did "not cite a statute, case, or any other authority"). Howell cites no authority to support his theories as to why the patents have or will revert back to him. These arguments are accordingly inadequately briefed, and we do not address them.[2]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[2] Howell raises several other arguments that are also inadequately briefed, and do not warrant consideration, including (1) that the recent death of a skier, who was possibly on ski bindings produced by KneeBinding, provides a basis for cancelling the injunction; and (2) that Judge Teachout colluded with KneeBinding's attorney by having him draft the declaration that the court issued as a sanction for the May 23, 2018 contempt finding. In addition, Howell seeks punitive damages for what he refers to as KneeBinding's "knowingly malicious behavior" over the last eleven years and a lifetime injunction prohibiting the Springer-Miller's from communicating with him or Howell Ski Bindings. Because these arguments relate to issues outside the scope of this appeal, we do not address them.