VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.       25-AP-018



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2025

Allen Pigeon\* v. Hazen Stone et al.

}    APPEALED FROM:
}
}    Superior Court, Chittenden Unit,
}    Civil Division
}    CASE NO. 23-CV-05407
     Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Plaintiff Allen Pigeon appeals a trial court order dismissing his claims against various State defendants.  We affirm.

## I.  Background

In December 2023, plaintiff filed suit against the State of Vermont, a Deputy State's Attorney, the former Vermont Attorney General, two Assistant Attorneys General, eight members of the Vermont State Police (VSP), and one private citizen, Hazen Stone.  His complaint included the following factual allegations.

In April 2020, an officer of the St. Albans Police Department (SAPD) responded to the scene of a single-vehicle accident near plaintiff's home.  Plaintiff's stepdaughter, M.S., was the driver.  There was a loaded handgun in her front passenger's seat and she falsely denied that she was intoxicated.  While she was being processed for driving under the influence (DUI), M.S. told the officer that plaintiff's son, Z.P.—who was also an SAPD officer at the time—molested her when she was a child.

M.S.'s father, defendant Hazen Stone, had called a VSP sergeant earlier that day to report that plaintiff and Z.P. had recently assaulted M.S. at her home after learning that she had begun telling others that Z.P. molested her.  After M.S.'s DUI processing was complete, two VSP troopers interviewed her about the substance of her father's statement.

M.S. alleged that several weeks earlier, two masked men she recognized as plaintiff and Z.P. entered her home while she was sleeping, threw her outside, and burned her all over her back with the tip of a cigar in a plastic holder.  She reported that the cigar tip was still on her property, laying in her firepit where she had thrown it after later finding it on her steps.  M.S.

also told one of the troopers that she was an alcoholic and did not take medication for her ADHD.

The next day, the VSP located a cigar tip in a plastic holder in M.S.'s firepit and preserved it for forensic analysis. They also interviewed numerous people about M.S.'s claims, including plaintiff and his wife. Plaintiff denied having been at M.S.'s home on the night of the alleged attack. He and his wife explained that they had recently been in conflict with M.S. regarding her visitation with her daughter—for whom they were serving as foster parents—as well as their pending petition for guardianship. Plaintiff was arrested following the interview. News of his arrest was reported by the media, damaging his reputation and negatively impacting his business.

A Franklin County Deputy State's Attorney charged plaintiff with simple assault, felony obstruction of justice, burglary, kidnapping, and second-degree unlawful restraint. See 13 V.S.A. §§ 1023(a)(1), 3015, 1201(c)(1), 2405(a)(1)(C), 2406(a)(3). The charges were based on a probable-cause affidavit authored by one of the VSP defendants. Although M.S. allowed the troopers to photograph her back during her interview, the affidavit did not disclose the existence of these photographs. The criminal court found that probable cause existed to support the State's charges.

Law enforcement continued its investigation after plaintiff's arraignment. An exhaustive search of plaintiff's home did not lead to the discovery of any inculpatory evidence. In May 2020, police learned that while the DNA of an unknown male had been found on the cigar tip, testing did not reveal the presence of DNA belonging to either plaintiff or Z.P.

In June 2020, the Attorney General's Office took over plaintiff's prosecution and continued the investigation. Over the following months, police continued to discover evidence tending to exculpate plaintiff and Z.P. and indicate that M.S. had lied to law enforcement.

Plaintiff's attorney deposed M.S. in mid-December 2020. She was extremely hostile, declined to answer many questions, and continued to contradict her prior sworn statements. She ultimately left the room and refused to complete the deposition. At the end of the month, the State dismissed all charges against plaintiff and Z.P. without prejudice.

In November 2022, the criminal court granted plaintiff's petition to expunge the charges against him. Z.P. was also exonerated of the same alleged crimes.

Based on these and other allegations, plaintiff raised claims of malicious prosecution, false arrest, assault and battery in relation to his arrest, false imprisonment, defamation, intentional infliction of emotional distress (IIED), civil conspiracy, and civil-rights violations and failure to intervene under 42 U.S.C. § 1983. He also alleged that the State was vicariously liable for the individual State defendants' conduct under the doctrine of respondeat superior.

The State defendants moved to dismiss under Vermont Rule of Civil Procedure 12(b)(6), arguing that plaintiff's complaint failed to state a claim against any of them on which relief could be granted. They contended that the existence of probable cause supporting plaintiff's criminal charges was fatal to the majority of his theories of liability, and that the remaining counts asserted against them were variously barred by sovereign, official, prosecutorial, and qualified immunity.

The trial court issued a written decision granting the motion to dismiss. Given the nature of plaintiff's arguments on appeal, it is necessary to recite its reasoning in some detail here.

The court first recognized that, in order to prevail on his malicious-prosecution claim, plaintiff needed to show that the individual State defendants either initiated or continued the case without probable cause. See Bacon v. Reimer & Braunstein, LLP, 2007 VT 57, ¶ 4, 182 Vt. 553 (mem.). It further explained that "virtually all" of plaintiff's other claims against the State defendants were "premised—directly or indirectly—on an alleged lack of probable cause." It noted that: plaintiff's assault and battery claims were expressly predicated on the allegation that he was arrested without a reasonable belief of probable cause; the existence of a valid legal process—i.e., a prosecution commenced on probable cause—defeated his false-arrest and false-imprisonment claims; given the existence of probable cause, none of the factual allegations in the complaint amounted to "outrageous conduct" as necessary to maintain his IIED claims; for the same reason, plaintiff failed to plead the existence of false and defamatory statements required to support his defamation claims; and plaintiff's civil-conspiracy claims and respondeat-superior theory thus failed for lack of an actionable underlying tort. The court therefore agreed with the State defendants—in order to go forward with the majority of his claims, plaintiff needed to plead an absence of probable cause.

The civil division's subsequent analysis of plaintiff's complaint relied heavily on our decision in Lay v. Pettengill, 2011 VT 127, 191 Vt. 141. There, we explained that "[t]he mere fact that a criminal tribunal found probable cause normally provides a presumption that probable cause existed in the context of a subsequent wrongful prosecution claim." Id. ¶ 22. That presumption is rebuttable, we held, "only if a plaintiff can demonstrate that the earlier finding of probable cause was based on misleading, fabricated, or otherwise improper evidence." Id. (collecting cases from other jurisdictions). To cross this threshold, a plaintiff cannot "merely plead the insufficiency of the evidence that was available to the criminal court at the time"; rather, "[t]here must be a plausible suggestion that the finding of probable cause would not have been reached were it not for some irregularity or impropriety." Id.

The civil division then reviewed the allegations contained in the charging affidavit and concluded—as detailed in our analysis below—that they amply supported the criminal division's finding of probable cause. It went on to consider plaintiff's argument that the allegations in his complaint were sufficient to rebut the presumption because they demonstrated that M.S. was an unreliable witness, and that the charging affidavit omitted or overlooked certain exculpatory evidence.

On the first point, the court recounted plaintiff's related allegations that M.S.: drove drunk with an unsecured, loaded gun in arm's reach; lied to the SAPD officer when she denied being under the influence of alcohol; was involved in a contentious dispute with plaintiff regarding her daughter; and told law enforcement that she was an alcoholic and did not take medication for her ADHD. The court explained, however, that the majority of these allegations had no bearing on M.S.'s propensity for truthfulness. Those that did relate to credibility, it reasoned, would provide fodder for cross-examination at trial but did not negate a finding of probable cause where the police had investigated M.S.'s allegations by interviewing multiple witnesses and searching the scene of the alleged assault before arresting plaintiff. The civil division also rejected plaintiff's argument that the other witness reports were unreliable because they each traced back to M.S., noting that the reports demonstrated that M.S. made consistent statements about the alleged incident to others before disclosing it to the police. As to the second point, the court similarly recognized plaintiff's allegations that: the charging affidavit omitted

3

certain information known to the police at the time, including the information about M.S.'s credibility discussed above and any reference to the photographs of M.S.'s back; Mr. Stone could have been the first to report M.S.'s crash through an undisclosed call; and a VSP trooper failed to make clear that she knew M.S. was the driver in the crash before she arrived to the scene. The court noted that plaintiff had not explained how the exclusion of these facts from the affidavit was significant.

The court reasoned that, setting aside the conclusory allegations in the complaint, plaintiff "merely plead[ed] the insufficiency of the evidence that was available to the criminal court at the time" it found probable cause, and failed to allege that the finding "was based on misleading, fabricated, or otherwise improper evidence" or to raise a "plausible suggestion" that it "would not have been reached were it not for some irregularity or impropriety." Lay, 2011 VT 127, ¶ 22. This failure, it concluded, necessitated the dismissal of every claim turning on the existence of probable cause at the initiation of the criminal proceeding.

Finally, the court rejected plaintiff's argument that even if probable cause had once existed, it ceased to exist at some point during the next eight months based on evidence discovered during the investigation. It acknowledged that certain investigative results were returned in plaintiff's favor but explained that this did not defeat probable cause because the State still had M.S.'s testimony—though some of the investigative results could bear on the weight of that testimony. It therefore determined that the prosecutors acted properly in continuing to pursue the case until they concluded, following M.S.'s deposition, that they could not meet their burden of proof. The court further held that in any event, absolute immunity barred all claims against the prosecutor-defendants arising from their decision to maintain the charges until December 2020 because this was a core prosecutorial function. See O'Connor v. Donovan, 2012 VT 27, ¶¶ 11-21, 191 Vt. 412 (explaining that prosecutors are absolutely immune from civil liability for acts intimately associated with judicial phase of criminal process, including acts related to dismissal or processing of criminal charges).

For these and other alternative reasons not relevant here, the court dismissed all claims against the State defendants. The sole remaining defendant, Mr. Stone, subsequently moved to dismiss the claims against him. Plaintiff did not oppose the motion, and the trial court accordingly dismissed the claims and issued a final judgment order. This appeal followed.

## II. Discussion

On appeal, plaintiff does not challenge the dismissal of his claims against Mr. Stone. He argues only that the trial court erred in granting the State defendants' motion to dismiss.

We review the disposition of a Rule 12(b)(6) motion without deference, applying the same standard as the trial court. Bittner v. Centurion of Vt., LLC, 2021 VT 73, ¶ 13, 215 Vt. 475. Under that standard, "[w]e assume that all factual allegations pleaded in the complaint are true, accept as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume that all contravening assertions in defendants' pleadings are false." Id. (alteration and quotation omitted). As plaintiff points out, "[m]otions to dismiss for failure to state a claim are disfavored and should be rarely granted." Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575 (mem.). But dismissal under Rule 12(b)(6) is nonetheless appropriate "when it is beyond doubt that there exist no facts or circumstances, consistent with the complaint[,] that would entitle the plaintiff to relief." Id.

4

Plaintiff's arguments on appeal each turn on his contention that the trial court erred by failing to adhere to this familiar standard.[1] He does not challenge its conclusion that the viability of the majority of his claims depended on a lack of probable cause. Nor does he argue that the court erred in holding that he could maintain those claims only if he alleged facts in his complaint sufficient to rebut the presumption of probable cause under the analysis set forth in Lay, 2011 VT 127, ¶ 22.[2] See State v. Giard, 2005 VT 43, ¶ 8, 178 Vt. 544 (mem.) ("A civil presumption places the burden of going forward with the evidence on the party against whom it operates."); cf. Vitale v. Bellows Falls Union High Sch., 2023 VT 15, ¶¶ 29-32, 217 Vt. 611 (concluding that because "statutes carry a presumption of reasonableness and of constitutionality," complaint raising facial constitutional challenge to statutory scheme must allege facts sufficient to overcome the presumption in order to survive Rule 12(b)(6) motion). To the extent plaintiff asserts that the court erred in concluding that his remaining claims arising from the continuation of the prosecution were barred by absolute immunity, this argument is inadequately briefed. Though plaintiff suggests that—were it not for the alleged infirmities in the court's application of the Rule 12(b)(6) standard—the court would have determined that immunity did not apply because prosecutors failed to drop the charges immediately after their investigation allegedly revealed his innocence, he fails to identify any authority supporting this proposition. See V.R.A.P. 28(a)(4). We therefore decline to address this argument. See Kneebinding, 2020 VT 99, ¶ 61. What remains, then, is to consider plaintiff's contention that the court misapplied the motion-to-dismiss standard and, as a result, erroneously concluded that plaintiff's allegations were insufficient to rebut the presumption of probable cause.

We first consider plaintiff's assertion that the trial court failed to take the allegations in his complaint as true. In support, he repeatedly draws our attention to a single sentence in the court's decision: it prefaced its summary of the allegations in plaintiff's complaint with the caveat that it was making "no determination as to their accuracy at this stage of the proceeding." This statement, however, is entirely consistent with the Rule 12(b)(6) standard. Because the purpose of a complaint is "to initiate the cause of action, not prove the merits of the plaintiff's case," the rules "require the court to take the plaintiff's allegations as true on a motion to dismiss"—not to make a determination on the merits. Colby v. Umbrella, Inc., 2008 VT 20, ¶¶ 13-14, 184 Vt. 1. Indeed, plaintiff neglects to mention that the court supported the statement

---

[1] We note that, rather than detailing each alleged error in the trial court's analysis, plaintiff offers limited examples he describes as illustrative and further requests that we consider additional arguments raised in his opposition to the State defendants' motion to dismiss. As we have long held, "[i]t is the burden of the appellant to demonstrate how the lower court erred warranting reversal," and "[w]e will not comb the record searching for error." In re S.B.L., 150 Vt. 294, 297 (1988); see V.R.A.P. 28(a)(4) (requiring that arguments raised in appellant's principal brief contain "the issues presented, how they were preserved, and appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies"); Kneebinding, Inc. v. Howell, 2020 VT 99, ¶ 61, 213 Vt. 598 (declining to address argument that failed to satisfy requirements of V.R.A.P. 28(a)(4) as inadequately briefed). We decline to scour the record searching for additional arguments or examples of error and address only those contentions properly raised in plaintiff's briefs.

[2] Though plaintiff contends that the court erred in suggesting that he was required to "negate" probable cause, see supra at 3, we read this language as a reference to the court's unchallenged conclusion that plaintiff needed to plead facts sufficient to rebut the presumption of probable cause.

at issue with a citation to this precise standard. The implication of the court's language is abundantly clear, and it in no way suggests that the court did not take plaintiff's allegations as true. As set forth above, it plainly did—it simply concluded that those allegations were insufficient to sustain his claims as a matter of law.

Plaintiff also argues that the trial court's limited summary of his complaint betrays a failure to focus its analysis on the substance of his pleading. It is true that the plaintiff's complaint is the center of the court's analysis under Rule 12(b)(6), but its ultimate task "is to determine whether the bare allegations of the complaint are sufficient to state a claim." Vitale, 2023 VT 15, ¶ 28 (quotation omitted). No aspect of this inquiry required the court to recite each and every allegation contained in plaintiff's twenty-four-page, 271-paragraph complaint. It needed only to determine whether the complaint contained allegations sufficient to support the essential elements of plaintiff's claims. See Colby, 2008 VT 20, ¶ 14 ("A motion to dismiss serves to identify an insufficient cause of action . . . where essential elements are not alleged."). The court's summary of plaintiff's allegations does not reflect a deviation from the appropriate standard.

Next, plaintiff suggests that the court erred in "limit[ing] itself to consideration of 'non-conclusory' allegations" within the complaint. But the law is clear: in evaluating the sufficiency of a complaint, courts "are not required to accept as true conclusory allegations or legal conclusions masquerading as factual conclusions." Vitale, 2023 VT 15, ¶ 28 (quotation omitted). The court did not err in thus limiting its analysis.

Plaintiff further contends that the court erroneously took the State defendants' countervailing factual allegations as true. This argument appears to be predicated on the court's recitation of certain allegations included in the probable-cause affidavit. Again, we see no error. Plaintiff's complaint relied on the probable-cause affidavit, expressly alleging that it formed the sole basis for the State's criminal charges. Where a complaint thus "relies upon a document," it "merges into the pleadings and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Kaplan v. Morgan Stanley & Co., Inc., 2009 VT 78, ¶ 10 n.4, 186 Vt. 605 (mem.) (quotation omitted) (explaining that trial court properly relied on entirety of town plan where plaintiff specifically referred to it in complaint but did not attach full text). A court is not obligated to accept allegations in the complaint purporting to tell it how to interpret such a document, although any ambiguities must be construed in the plaintiff's favor. Davis v. Am. Legion, Dep't of Vt., 2014 VT 134, ¶ 13, 198 Vt. 204.

Here, plaintiff alleged in his complaint that the affidavit "contained not a single reference to any potentially inculpatory evidence other than that [plaintiff] disliked [M.S.], and thought he knew where she lived." But this was not an accurate description of the affidavit. As the trial court explained, the allegations in the affidavit included that:

> [M.S.] reported the alleged assault and a potential motivation to suppress allegations of sexual abuse of [M.S.] by [Z.P.]; she described cigar burns as part of the assault, and detectives observed scars on her back; witnesses stated that they had also heard about the alleged incident and seen burn marks on [M.S.'s] back; [M.S.] diagrammed her residence and explained where the cigar tip might be located; detectives located the cigar tip in the location indicated; [Z.P.] denied ever having a sexual relationship

with [M.S.] before recanting that denial; and [Z.P.] also stated that he was off-duty on the weekend of the alleged incident.

The court reasoned that these allegations demonstrated a reported crime, a complaining witness who had made consistent statements to others, and the suspects' motivation and opportunity to commit that crime. Contrary to plaintiff's assertion in his complaint, all of this was potentially inculpatory evidence. Cf. Barron v. Mason, 31 Vt. 189, 195 (1858) (explaining that "probable cause is not to be confounded with actual guilt" and is "only such a state of facts and circumstances as would lead a careful and conscientious [person] to believe that the plaintiff was guilty"). Because the affidavit merged into the complaint and the complaint's characterization of the affidavit was at odds with the affidavit's text, the trial court did not err in setting aside that characterization and looking directly to the source. Davis, 2014 VT 134, ¶ 13 ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quotation omitted)).

Finally, plaintiff contends that the court failed to draw all reasonable inferences in his favor. While plaintiff's argument on this point is somewhat difficult to follow, he appears to generally suggest that appropriate application of the 12(b)(6) standard should have led the court down a chain of inferences along the following lines: (1) M.S.'s lie to the police about whether she had been drinking on the day of her report raised serious concerns about her credibility, and these concerns were particularly salient because her ongoing conflict with plaintiff could provide a motive for her to fabricate allegations against him; (2) because there was reason to exercise caution regarding M.S.'s veracity and motives, other witnesses' statements to police that M.S. made previous consistent disclosures demonstrated only that she had previously repeated the same false allegations; (3) in light of the foregoing, and given the "sensational" nature of M.S.'s allegations, reasonable law-enforcement officers would have further investigated her claims before arresting plaintiff; and (4) information about M.S.'s lie during the DUI investigation was so material to the existence of probable cause that its exclusion from the affidavit—along with the photographs of her back and other possible information pertaining to how and when VSP learned of the crash—suggested a purposeful attempt by the affidavit's author to avoid an appearance of bias in favor of M.S. and prejudice against plaintiff.

We first note that plaintiff fails to meaningfully ground his analysis in the law surrounding probable-cause determinations. See, e.g., State v. Arrington, 2010 VT 87, ¶ 22, 188 Vt. 460 (observing, in rejecting defendant's argument that informant's report did not establish probable cause for warrantless arrest, that "[t]he fact that the informant made a self-serving declaration to try to prevent liability for an additional crime does not undercut our reliability assessment"). This oversight is significant because, in this context, the reasonableness of most of plaintiff's proposed inferences is necessarily evaluated against that backdrop. In any event, we conclude that this series of inferences is simply too speculative and attenuated to raise a "plausible suggestion" of "irregularity or impropriety" sufficient to rebut the presumption of probable cause. Lay, 2011 VT 127, ¶ 22 (emphasis added); see, e.g., Vitale, 2023 VT 15, ¶ 39 ("It is not reasonable to infer from the experiences of eight children from three families who benefited from or thought they would benefit from tuitioning that there is a factual link between town tuitioning and educational outcomes for all or even a substantial portion of Vermont children."); Montague v. Hundred Acre Homestead, LLC, 2019 VT 16, ¶ 20, 209 Vt. 514 (rejecting argument that allegations that resident of care facility inquired about going target shooting to deal with aggression supported a reasonable inference that plaintiff, owner of target-shooting facility, was part of determinate class of potential victims facing particularized threat).

Plaintiff has identified no basis to disturb the court's dismissal of his claims against the State defendants.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
Nancy J. Waples, Associate Justice